UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

ELIZABETH A. MARCZESKI      :    CIV. NO. 3:01CV01437 (AHN)(HBF)
    Plaintiff,                          :                                    2004 MAR -1  P 2: 07

    v,                                        :    FEBRUARY 22, 2004      US DISTRICT COURT
                                        BRIDGEPORT CT

SUSAN B. HANDY, ET.AL.,      :
Defendants.

## MOTION TO OBJECT TO DEFENDANTS MOTION OF SUMMARY JUDGMENT BASED ON RULE 56 F.R.C.P. AND 569(a)(1) LOCAL RULES

1. To begin my objection, I must say that I did read the 4" documents of the defendants of which each defendants has contradicted themselves in their motion(s) and exhibit(s). In filing the Civil Action against the defendants, I felt that suing them in their "individual" capacity was more appropriate that "official" capacity as I did not feel the defendants acted in a professional manner while I was incarcerated at CVH.

2. I will show to this Court the contradictions by the defendants and that their overviews of contention that there is no real genuine issue of material facts exists to be false. Defendants Exhibit (A) clearly re-affirms real and genuine facts to my grievances while incarcerated at CVH.

3. As to the defendants exhibits, I will be calling the Defendants Exhibit (A) as Doc.#1; the Defendants Local Rule 569(a)1 Statement of Material Facts Not in Dispute as Doc.#2; the Defendants Exhibit (B) and the Defendants Exhibit (C) as Doc#3; and refer to the Defendants Exhibits (D) through (M) as Doc#4.

Courtesy copy to: Honorable Judge H. B. Fitzsimmons

1

4. The reason of my referring to the defendants Exhibits including documentation as "Doc. #'s" is that I will be going from one document to another document such as (e.g. see Doc#1 page 130 or see Doc# 2 line 133). In order to not confuse the the Court, each defendant has made a testimony to their attorney that comes confusing as the dates and stories change, thus, I ask that each one look at what one document may state and contradict that statement in another document regarding the same issue.

5. As to Exhibit (K) and (L), Kim McKeon did not sign the affidavit nor did Dr. Pichay Exhibit (L). There is document furnished by the defendants that I was referred to legal aid which was McKeon. She gave me her business card. As to Dr. Pichay stating in his affidavit that he has never seen me is upsurb. I have the medical document from Pichay who saw me at the Dept. of Mental Health and Addiction Service in Norwich, CT. I will be offering that Exhibit to the court but has yet to name all my exhibits until the end.

6. Exhibit (M) of the defendants exhibits is my copy of my expert witnesses. I had no idea that counsel for the defendants was going to contact my witnesses without my knowledge or authorization. I find it rather intimidating to say the least, especially, when counsel for the defendants phoned my former Public Defender Watkins who now remembers nothing (which is convenient) for the defendants. I object to the counsel of the defendants for contacting my witnesses without my knowledge. When I contacted the Commissioner of the prisons and of CVH, counsel for the defendants jumped all over me and told me to never phone him again. Which leads me to believe something is being covered by the defendants.

7. Counsel for the defendants do not even contact me to ask me if I object to their extension. Counsel for the defendants do not exactly follow all the rules.

8. I also object to the length of time the counsel for the defendants got extended over and over to seek new strategy to dismiss this civil action. The defendants now come up with qualified immunity after all these months. I will address that issue as the facts are real and genuine.

## OBJECTION TO DEFENDANTS STANDARD FOR SUMMARY JUDGMENT MOTION

1. In the defendants opening statement to move entry judgment against the plaintiff and all her claims, the defendants have failed to focus on not just how I got to CVH but what occurred to me while at CVH. The defendants focused on medical documentation that is 21 years old and by State Law is passe. The defendants failed to include any documentation that is current as required by State Law. The medical documentation being 21 years old is non--enterable as it based on fraud by a Dr. Coric who was arrested by the State of CT twice for Medicaid and Medicare fraud, and also defrauded me three times including the VA Medical Center.

2. The defendants continue on page 1 of the Memorandum of Law in Support of Motion for Summary Judgment, to enter that I was sent to CVH for 60 days by Knox and Fox. It was 2 weeks to 60 days and no more.

3. Page 2- The defendants contend that no genuine issue of material facts exists.

4. In my objection to the defendants issue of facts, I submitted that the Plaintiff move for the entry of summary judgment in favor of the plaintiff and against the defendants

3

on the grounds that the facts ARE real genuine issues of facts and the plaintiff is

entitled to a judgment as a matter of Law.  The real issue of facts can be supported

by the defendants own submission of Exhibit (A) (or Doc#1)

5.  In the alternative, if judgment is not rendered upon the whole or for all the relief

asked and a trial is necessary, the Court at the hearing of the motion, by examine

the pleadings and evidence before it and by interrogating counsel and the parties

ascertain what material facts exist without substantial controversy and what material

facts are actually and in good faith controverted, and make an order specifying the

facts that appear without substantial controversy, and directing such further

proceedings in the action as may be just and proper.

6.  In any controversy, I argue that the Court is required to accept as true all

factual allegations in favor of the plaintiff.  *Hernandez v. Coughlin* , 18 f.3d,

133, 136 (2nd Cir. 1994).

7.  Should the defendants argue to dismiss my complaint pursuant to Rule 12(b)(6)

of the F.R.C.P. for failure to state a claim upon which relief can be granted is not

warranted "unless it appears beyond doubt that the plaintiff can prove no set of

facts to support of [her] claim which would entitle [her] to relief *Conley v Gibson* ,

355 U. S. 41, 45-46 (1957).  I am also pro se.  My evidence of proof are

grievances that the defendants have copy and by the defendants submission of

their Exhibit (A) (Doc#1).

8.  The defendants Exhibit (A) support my claim of genuine facts of material and

relief.  Exhibit (A) of the defendants are notes by the staff that would support the

assault and the cruel and unusual punishment of me by the defendants.

I. DEFENDANTS ARGUMENT MOTION (PAGE 4)

1. I have no objection to the defendants argument regarding Title 18 U.S.C. 241 and 242. I believe the Title 18 is the 'color of the law' discrimination.

2. However, the defendants did violate my 8 (VIII) Amendment Rights of the U.S. Constitution by subjecting me to cruel and unusual punishment.

II. DEFENDANTS MOTION OF ABSENT ANY EXPERT....STANDARDS. (PAGE 4)

1. Contrary to the defendants argument that I must produce expert evidence, evaluation, care and treatment decisions of the defendants, I did provide such evidence to this Court and the defendants submission of their Exhibit (A). I provided grievances that are supported by defendants Exhibit (A)(Doc#1).

2. I have as an Exhibit a medical evaluation from Dr. Pinchay for the last three years, as by State Law that my mental health record must be reviewed every 6 months. I suffer from Post Traumatic Stress Disorder (PTSD).

3. Defendant Deshpande relied on a 21 year old medical record to support her judgment in my continuation of incarceration. I will be relating to this issue later.

4. The defendants decided the care and treatment of me by using a 21 year old medical record that is passe to treat me to continue my incarceration at CVH which is non-professional.

4. Defendants Knox and Fox used their evaluation of me to be sent to CVH based on a 21 year old medical record to incarcerate but me also agreed to the Stipulation of medical treatment of an implant which will be shown that Deshpande phoned Dr. Miller without my consent or authority to post-phone the surgery which violated my

right to a serious medical condition and violated a court order of agreement that I would be allowed to have the surgery if Judge Handy sent me to CVH immediately. This is not happen. Judge Handy expressed to Knox that if I did not have the implant, she would not send me to CVH unless CVH agreed to allowing me to have the surgery and medical appointments. Knox stated that CVH would accommodate to this which is not true. Knox can not remember what he even testified to at the time. CVH did honor the Stipulation guaranteed by Knox to Judge Handy. This would be considered bad judgment by the defendants in their profession to make decisions in their care and treatment of me. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital* April 3, 2002. (death of an inmate -gross negligence and inadequate training), *Winsborrow v. Connecticut Valley Hospital,* August 1999, paralyzed - claiming negligence of physicians at CVH (admitted voluntarily).

5. My Public Defender phoned to get me out of CVG due to that Stipulation that Deshpande had canceled without my authorization to speak to my doctor, thus, violating my privacy rights.

6. It was at that same time, Watkins told me, Fox phoned her to relate that he was late, agitated, and did badger me to fail the competency.

7. I will also show through Doc's #1, #2, #3, and #4 that the defendants seem somewhat incompetent themselves in getting dates correct and what accurately occurred.

8. The treatment decisions came of the the 21 year old medical record that is passe

and treated me accordingly, and did not use good judgment in re-evaluating me

to see if I still suffer from borderline personality, paranoia, etc. (which I do not and

never did). *Winsborrow v. Connecticut Valley Hospital* (negligence of physicians).

9. In the treatment decision, Deshpande gave me Olanzaphine for a mental illness

that I do not suffer from based on a 21 year old medical record provided by the

defendants (and with my signature or authorization - violation again of privacy).

10. I did take Trivial, however, I knew it was divided into a anti-depressant and

an anti--psychotic. Therefore, during the 80's when there was not many depressants

on the market, the VA gave me the depressant of the Trivial and not the anti-psychotic.

11. I get all my prescriptions from the VA Medical Center and the contractor with

the lowest bid wins. As for Trivial, the doctor wrote the prescription for the

tricyclic (antidepressant) and not perphenazine which is an anti-psychotic.

12. As time changed, new anti-depressants came out and I was on zoloft. I was

at one time taking an anti-depressant from a Dr. Crab of New London while

in the Navy. I had suffered from major depression which became traumatic.

Wherefore, I considered the evaluation, care and treatment decisions to less than

professional and good judgment when the defendants simply relied on a 21 year

old medical record rather than spare to time to re-evaluate (which the defendants

had the time to do but relied on old documentation.) *Winsborrow v. Connecticut*

*Valley Hospital* - negligence of physicians August, 1999.

13. When the State takes a person into its custody and holds him there against his

will, the Constitution imposes upon it a corresponding duty to assume some

responsibility for his safety and general well-being. Also the State may be liable for

an individual's safety "if it created the danger that harmed the individual.

14. In reading Youngberg, CVH were not professional in there regards to my safety when I was assaulted by a male patient who has done permanent damage to my right arm. CVH should at least expected there would be some 'danger' and 'safety' factor when incarcerating me into a restoration unit that was co-ed (having both males and females all on one ward. *Winsborrow v Connecticut Valley Hospital* negligence of physicians, August, 1999.

15. The defendants state that my 8th Amendments rights do not apply since I was committed to a mental health system. I was in a restoration unit to see AND/OR what may be incompetent about me. Under Youngberg, the defendants state they are only required to provide such treatment and skills training as an appropriate professional would consider to ensure safety, to facilitate its resident's ability to function free from bodily restraints, and to prevent basic self-care skills from deteriorating. Therefore, the defendants state that I have no due process right that exists for any specific type of treatment or training. Also under Youngberg, the defendants were exercising their professional judgment regarding the care and treatment of class members are presumptively valid.

16. Due Process - as I understand the definition, a fundamental of fairness in all legal matters both civil and criminal especially in court. (I should be able to use my 8th amendments right in a civil action) All legal procedures set by state and court. Practice, including notice of rights, must be followed for each individual so that no prejudicial or unequal treatment will result. While somewhat indefinite the term can

be gauged by its aim to safeguard both private and public rights against unfairness.
The universal guarantee of due process is in the 5th Amendment to the U. S.
Constitution, which provides "no person shall...be deprived of life, liberty, or
property, without due process of law," and is applied to all states by the 14th
amendment.  The most basic right is to be given notice and the opportunity to be
heard.

17.  I looked up substantial due process and could not find it in the law dictionary.

18.  Since I am (according to the defendants entitle to my 8th amendments rights
as they are barred since I was incarcerated in a restoration unit, I will change my
strategy to use my 1st amendment right of free speech, religion, and my right to
petition my grievances.  In using the 1st  amendment right, I was denied to attend
church services which I will point out in the Defendants Exhibit (A) Doc#1, and
denied to seek  solace from a priest, rabbi, or minister. *Patients'Right* authored
by Bill Brady, Patient  Advocate, GPD., page 6, 11/98.

20.  I will also change my strategy (as well as the defendants did with many
extension) and seek damages for non-accommodating to disabilities siting the
ADA (American with Disabilities Act). *Beckford v. Irvin*, 49F Supp. 2nd 170
(W.D.N.Y. 1999). discrimination of disabilities (incarcerated - cane)

21.  As I will show as fore mentioned, that the defendants were less than professional
by their judgments, treatments and care of me while at CVH.  The defendants
were inadequately trained and grossly negligent in the care and treatment of me
which would include the staff.  The staff follows the orders of the medical team
meaning the defendants. *Bell v. Whiting Forensic Division of Connecticut Valley*

*hospital,* April 2, 2002

22.  Dr. Bergherr's testimony is relevant as to diagnosis of me differs from the defendants diagnose' since the defendants relied on a 21 year old medical document. Bergherr has me down a PTSD and the cause being trauma and in 1980 suffering from major depression.  The testimony is relevant as the medical report is current and not 21 years old.

23.  I have the records of Dr. Pinchay who saw me on different occasions that are submitted under exhibits which I will point out.  Although, Pinchay used the old medical record as a reference, such as history of (h/o) schizophrenia, no longer applies and has PTSD (Post Traumatic Stress Disorder).  The new up-dated medical record will disclose that I require no medication and that I am basically normal.  This will  invalidate the defendants notion of treatment of me at CVH in treating me for a mental disorder that I do have suffer from.

24. Dr. Pinchay did not sign the Affidavit as the other defendants did.  I will include this as an exhibit.

25. Kim McKeon did not sign the Affidavit either as Pinchay, as I will submit as an exhibit.  I will also show by the Defendants Exhibit (A) Doc#1 that I was referred to McKeon by the medical staff. I also have a business card given to me by McKeon.

26.  William Brady did not investigate my grievances.  He states his investigation was merely by looking over my 21 year old medical record, rather than contacting the parties I complained about.  Upon getting released from CVH, Brady contacted me via phone and was berating me as to why I am pursuing my civil matter against CVH.

I expressed to him why, that I felt I was abused and required to stay longer than was necessary and that the whole matter was a nightmare.

27. I even had to file a complaint against Brady to see me. Brady refused to see me or discuss my grievances. As he notes, his investigation only lead to reviewing my medical record which was not the complaint. However, Brady was concerned about the guard who took me for my biopsy and would not allow me to have the biopsy as she refused to unshackle me. Also the guard made me lay down on the back seat as they was no leg more and pulled on my legs (especially my left knee) that I just had surgery on. The guard was abusive and humiliating and allowed me to fall on the ground as I was denied my cane. I have bi-lateral instability. Taking the cane from me by the defendants was a discrimination of my disabilities.

*Becker v Irvin* 49 F Supp.2nd 170(W.D.N.Y.1999) - awarded prisoner compensatory damages of $125K, punitive 25K for wheelchair, cane, denied showers, recreation, and water for 1 month.

## II. DEFENDANTS - PLAINTIFF'S CLAIMS OF CONSPIRACY...ANY EVIDENTIARY FOUNDATION

1. My only belief in what I believe is a conspiracy is how I got to CVH which was wrongful. The prosecutor Steere supported my going to CVH by documentation of Exhibit (A) that the Honorable Judge Goettel recommended that I be sent to CVH which is not true.

2. The defendants conspired to keep me at CVH for the 60 days to get the $600 plus from the Federal Gov't which gives them money for incarceration which can be verified by nurse Fran who brain washed us daily on the amount it costs to keep us

11

and the federal gov't pays for the incarceration. Accordingly, the money was said to pay for over-time as CVH is under-staffed. This would lead to the violation of my right not to take the anti-psychotic drug but face the alternative of CVH writing to the Judge and state that I was non-complaint and further my stay. It is a no win situation of pure violation of my right to refuse to take a drug that impaired my thinking and did not correct or enhance my thinking.

3. Knox and Fox, in my first impression of seeing them, I knew that I was going somewhere but did not know where. Since they both badgered me to fail the test, I was sure to be sent to some institution. It was pre-fixed that I be sent even before seeing Knox and Fox. Their other excuse would be to send me to CVH would be that I refused to give them authority to my VA medical record. Wherefore, Knox and Fox relied on a 21 year old document to incarcerate me. The defendants actually wanted something more recent like my VA file, but instead relied on an out-dated medical record that is a fraud. In speaking to Dr. Coric, he states that the defendants were to re-evaluate me but they did not.

4. Brady again swears that he investigated my allegations (grievances) , however, his investigate was to review my medical history -- the 21 year old medical report.

5. The defendants just resorted to sent me to CVH no matter what. Fox and Knox were excessively late and were in a very bad mood which was unfair to me.

6. Judge Handy has done two things as a result of CVH's treatment of me: (1) she asks the defendant if he/she would like their attorney present during a competency test so that it does not turn into he said - she said, and (2) Judge Handy does not sent anyone to CVH as far as I know. They either do the competency in jail or go

to UConn at Farmington.

7.  If my attorney been present, the scenario would had been different as well as the outcome of me going to CVH.  Unfortunately, what now is being done to have a witness present is a little too late for me.

8.  The other conspiracy is that Franco as he writes in the daily medical record that he is "covering" for Puglisi.  Therefore, CVH would not release me until Puglisi's return with is a form of fraud.  The fraud was that my stay at CVH was extended due to Puglisi's vacation and Franco covering for him until his return.  I could had been release sooner had CVH assigned me to another forensic monitor but that did not happen.  CVH needed that $600 plus per day to pay for overtime

## IV.  DEFENDANT'D  - PLAINTIFF FAILS TO ....STATE A CLAIM WHICH

1.  I did state a claim  in which relief can be granted.  Should the defendants argue to dismiss my complaint pursuant to Rule 12 (b)(6) of the F.R.C.P. for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts to support of [her] claim which would entitle [her[ to relief. *Conley v. Gibson.* 355 U.S. 41,45-46 (1957). I am pro se.  My evidence  of proof are my grievances as well as the defendants copy of Exhibit (A) Doc#1.

2.  The defendants were negligent in prescribing me an anti-psychotic for a mental order that I do not suffer from. ( Deshpande and the medical team which includes the other defendants other than Knox and Fox who did not prescribe the

medication).

3. The defendants took away my cane which is discrimination and non-accommo-
dation of my disability rights. I have bi-lateral stability and should have have my cane.

4. The defendants were negligent in that I was (as well as the rest of the ward) to be
without water for over a week. A water fountain was presumed fixed but was not,
thus, there was no water available.

5. The defendants denied me my right to attend religious services which is my 1st
amendment right. I was denied a priest, rabbi, or minister during my entire stay at
CVH. I enclose exhibit stating my rights supplied by CVH giving me those rights
that were denied.

6. The defendants should had well expected danger and harm on a unit that is co-ed
which could cause harm to other patients. I was assaulted by a male patient and
should be compensated for the permanent injury to my right hand, arm. The
defendants were negligent in there providing safety for me while at CVH. And the
defendants were inadequately trained to prevent the assault.

7. The defendants were negligent when I was without a back board. It took 4
weeks for the defendants to give me a back board. The defendants submitted that I
was given the back board on Aug 4, 1999 , which is actually a date that it was
ordered. The warehouse was out of back board and had to re-order the boards
which took about 4 weeks.

8. The defendants were negligent in allowing me to bathe in industrial soap. I was
never given (and I do mean NEVER) any soap by the defendants. I received soap
from my visitors and won a bar of ivory soap at a bingo game.

9. The defendants were negligent in that I was only allowed to use soap for my bleeding scalp once a week if any. My scalp and my body skin continued to bleed.

10. The defendants were negligent in that I was not permitted to have my biopsy on my right breast, my implant surgery due to Deshpande phoning my doctor without my authorization to delay or put off the surgery.

11. The defendants failed to accommodate me as an American with Disabilities. My cane and crutches were taken away from me that caused me to further injure myself. The defendants did not use professional judgment in the taking away of my cane and crutches which I need to prevent me from falling due to instability and having fractured both ankles and the right tibia. This was discrimination of my disability rights under the ADA. The defendants also lack adequate training sensitive to to the ADA and my disabilities.

12. The defendants lacked in their judgment whether I had proper nourishment which I did not have and was starved and became anemic. Negligence by lack of poor and unprofessional judgment and inadequate training.

13. Puglisi was negligent in that he left for a lengthy vacation to merely warehouse me until his return during the time of his absence. I saw no forensic doctor such as Dr. Franco. Franco merely said he would "cover" for Puglisi but in the daily medical record, Franco did not "see" me but "reviewed" my case. Thus, the Franco and Puglisi were negligent, used poor judgment, and lacked adequate training. The difference is that Franco states he saw me, which is not true. Franco saw me by reviewing my daily medical record. The is very inadequate.

/5

14. The defendants caused me great suffering, duress not only for being falsely

committed to CVH based on prosecutional misconduct, but also the wrong doing

by the defendants themselves. I have suffered defamation, humiliation, shame, fear,

excessive trauma (still coping), harassment and was subjected to cruel and unusual

punishment by the defendants who acted in a non-professional with an egregious manner

and in an inadequate manner.

15. I also suffered lost of wages as I am too traumatized to work at this time.

16. I ask for compensatory damages for discrimination of disabilities and $75,000

per defendant for pain and suffering, duress, emotional duress, and trauma caused

by the actions of the defendants in the unprofessional manner that I was cared for and

their failure to protect me from danger that the defendants had hind eye-sight that

would occur having a co-ed unit. That danger was the assault that has caused me

permanent damage to my hand, arm.

17. The defendants were aware of the violations and did not act but yet documented

the incident in the defendants Exhibit (A) Doc#1.

18. In the defendants own argument that I must allege a tangible connection between

the acts of the defendants and the injuries suffered, I will connect the defendants to

the injuries and connect it by the defendants Exhibit (A) Doc#1.

19. Mullaney who is CEO of CVH failed to provide me a new bed as he did with

other patients. My bed had feces and urine on it with a deep hole in the middle.

I wrote a grievance regarding the beds. The next day, the warehouse delivered beds

but I was unable to pick my bed up to get a new bed. I was told to get my bed

by staff in order to get a new bed. The bed was too heavy as I have lower back

pains.. Mullaney defends on his staff to run and control the hospital in a professional manner. This did not happen. Mullaney discussed my grievances with an Alice Smith daily. The main subject was the sexual harassment, groping, and patients having sex with each other. Mullaney directed Smith to deal with the problem but ignored it. Mullaney failed to check to see if the sexual problems have been solved. Those sexual problems escalated. Mullaney acted in negligence with poor lack of judgment in assigning this to Smith who did nothing. Mullaney thus lacks adequate training in sexual harassment and how to end the harassment and how to approach the issue.

20. Mullaney did nothing to check up on my grievances with Brady but simply pushes the paper to someone else. This substantiates Mullaney lack of professional training, position, judgment, and authority. Mullaney did nothing.

21. In Mullaney's own words, he swears in a affidavit demonstrating a lack of personal involvement. I sent my grievances to Mullaney, and I expected him to at least act on them. But Mullaney swears to demonstrating a lack of involvement which would mean he did not care that patients were having sex on his unit, and sexual harassment was happening as well as groping. For Mullaney, this is a clear act of gross negligence, lack of adequate training, and poor judgment. Summary judgment should not be granted for Mullaney. *Bell v. Whiting Forensic Division Connecticut Valley Hospital*, April 3, 2002. (gross negligence, inadequate training).

## V. DEFENDANTS - SHIELD OF QUALIFIED AMMUNITY

1. To address this issue of qualified immunity, I claim that the defendants did not

17

act reasonably, they did violate the law, and they did violate my rights to privacy;

my right to be accommodated to my disabilities; my right to be under a protection

of safety and not under danger to harm; to be free from sexual harassment, groping

and assault; deprived of nourishment, and the extension of my stay was deliberate,

denial to see a priest, rabbi, or minister; and the defendants own lack of judgment,

professionalism, and gross negligence that was inadequate. *Bell v Whiting Forensic*

*Division of Connecticut Valley Hospital*, April 3, 2002, (gross negligence, and

inadequate training.) *Patients' Rights* the Grievance Process, Patient Access to

Medical Records, Recovery and Self-Help Resources, authored by Bill Brady,

Patient Advocate, GPD, 11/98, page 6.

2.  In determing whether an official is entitled to qualified ammunity we (1) identify

the specific right violated; (2) determine whether the right was clearly 'established';

and (3) determine whethr a reasonable officer could have believed that his or

her conduct was lawful.  In my determination, the defendants violated my 1st

admentment right to religion and was denied to see a priest, rabbi, or minister and

that has been established and was unlawful; and the defendants did discriminate

against my disabilities in that my cane was taken away (although Despande states

in the record she gave it to me, she refused to give me my cane) as I have bi-lateral

instability and that fact has been established and is unlawful; and my allegations of

facts are real and genuine and are supported by the defendants own Exhibit (A).

*Valley v. Briggs,* 475 U.S. 335, 341 (1986) - although the city may not be

liable for the mistakes of it officers on a respondent superior basis, it is not

entitled to the shield of qualified immunity afforded to its officers.  Cities can be

held responsible for providing traing to be aware of civil rights and violating them. The defendants lacked in the professional judgment in their treatment and care of me while incarcerated at CVH and I was continually shackled to medical appointments. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital*, April 3, 2002. (gross negligence and inadequate training).

3. To make out a 8th amendment claim based on failure to provide adequate nedical care, a prisoner must show that the State defendants exhibited 'deliberate indifference' to his 'serious medical needs; the mere negligent or inadvertent failure to provide adequate care is not enough. *Estelle v Gamble*.  The protections of the due process clause both substantive and procedural, maybe triggered by the State, by the affirmative acts of it agents, subjects an involuntarily confined (individual to deprivations of liberty (see e.g. Shackling involuntarily commited [489 U.S.  189m 201] mental patient) *Hughes v. Rowe*, 449 U.S. 5, 11 (1980). Several Court of Appeals have held by analogy Estelle and Youngberg, that the State may be held liable under due process for failing to protect and mistreatment *Doe v N.Y. City Dept. Social Services* 649 F2nd 134, 141 -142 (CA2 1981).

4. In the care and treatment of me, the diagnose of me was grossly negligent as the defendants relied on a 21 year old  medical record.  If the defendants had been trained properly, the defendants would have re-evaluated me to give me a more current and up-to-date diagnose.  The defendants did not do this which would make their training inadequate. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital*, April 3, 2002, (inadequate training, gross negligence).

5. The defendants were grossly inadequate and in judgment in accommodating to my disabilities as to taking away my cane and crutches. CVH have never given me back my crutches which the VA medical center gave to me. That is thief of my private property. It is quite humiliating to tell the hospital that I need new crutches because CVH would not give them back to me. *Winsborrow v Connecticut Valley Hospital,* August 1999, ( negligence of physicians). *Beckford v. Irvin,* 49F Supp., 2nd 170(W.D.N.Y. 1999). ADA disabilities - discrimination.

Defendants Fox and Knox

1. The defendants Fox and Knox were grossly negligent in the manner that they claim they used their professional judgment in the evaluation of me (plaintiff). The defendants claim that I was out on bond, but was out on PTA (promise to appear). The defendants were very late in the scheduled appointment of me. I believe to be an hour and 1/2. I had to wait or I would be arrested for failure to appear. The defendants had been at the Corrigan Prison and when they entered the office of where I was waiting for not apologetic and were angry and in a bad mood. The defendants transferred their anger over to me. In taking the competency test, there were 3 people present: (1) Knox, (2) Fox, and (3) Jahn. Knox did not utter one word but hid behind a three-ring binder like a scared cat. Fox did all the testing. Jahn only asked me one question of which I do not remember. I could not remember because of the intense badgering by Fox. It was deliberate and intentional that I fail the test so that I be incarcerated at CVH. Their professional judgment of evaluating me was blinded by the defendants own accord. The defendants had in

there possession the 21 year old medical document that was a fraud supplied by prosecutor Steere. I felt I passed the competency test, but knew on the onset of meeting the defendants that I had to chance in hell to survive their evaluation. The defendants in using the 21 year old document were grossly negligent in their assessment of me during the test. The time I spent with the defendants was 15 minutes and not the hour as they state. Believe me, I would know as I wanted to leave as quickly as possible as I felt threatened by the defendants. At the beginning of the competency test the defendants asked me to recall five words such as blue, honda, bird, August, and history. The defendants failed to remind me of the last words at the end of the competency test. The forgot themselves. The defendants seem to lack in their own competency. I was set-up by the defendants to fail and they relied on the failure through badgery. Wherefore, the defendants were inadequate in their professional training to evaluate me.

2. No matter what any defendants state, Diana Law and Gena Butler did have me arrested to block the Federal suit against them. Those defendants (Law and Butler) were found liable for stalking changed to harassment, fraud, and emotional duress.

3. I filed the civil suit after the arrest in which Law stated in the police complaint that I threatened her son. Law felt the threat was her getting "notice of service". The police complaint against me was made before I filed the civil action which would make that threat against her son a lie. She had me arrested as MCI was going to fire her for using corporate own equipment for personal gain which at work for MCI. Law and Butler solicited money from me to invest in a publishing company that is non-existent. After the first warrant being denied, Law call 5 girl friends to phone the

police to tell the police I harassed her. The girl friends that phoned the police then got upset as they did not expect to get sued after lying to the police. Law and Butler involved the police, girl friends, the prosecutor, CVH. in her plan to have me not only arrested but incarcerated. Law's plan was to re-arrest me over and over until Judge Handy told her that no more complaints by them would be taken ever again even should they be "real". The police complaint against me was false and I proved it to be false. Law and Butler confesses that not each phone call was harassing to each other and there was no real threat to her son. Law did take part in having me incarcerated at CVH. Law furnished the police and the prosecutor with the "uncomprehensive" document where Judge Goettel clearly states that He never stated I was incompetent as misconstrued by Steere who offered to document to Handy to further her reasoning to have me go to CVH.

4. Fox and Knox in using their professional judgment based on training and experience were grossly negligent in their evaluation of me by using a 21 year old medical record supplied by the prosecutor. That medical record is of error; authored by Dr. Coric is a fraud. The defendants in using their professional judgment should at least used an up-dated medical record rather than rely on a record that is 21 years old. At the time the medical record was written by Coric, I was in major depression over the death of a room-mate which I witnessed, and the death of my grandmother who raised me.

5. Fox did confess to my public defender over the telephone, but continue to dismiss the allegation because they claim to be professionals which they are not.

6. The other reason for the defendants reason to send me to CVH, as they wanted my VA medical record which would of taken 6 months or more. Thus, the defendants confirm that they actually needed medical documentation that should be more current. Instead, the defendants relied on the 21 year old medical document that is passe and a fraud. By using this passe document, the defendants were inadequate in their training, judgment, decision making, and evaluation of me. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital*, April 3, 2002. (gross negligence and inadequate training).

7. Knox in testifying in Judge Handy's Court, did perjure himself in stating to Judge Handy that CVH would allow my implant surgery as a condition of me going to CVH (stipulation). Knox tells Handy that I am merely getting an injection in my knee, but Handy explains to Knox that I am having a serious operation, and that the operation is an implant. Knox becomes confused, and leaves with my Public Defender Watkins and myself (plaintiff) to the Public Defenders office. He tries to phone CVH but never contacts them in their authorization of my surgery. Knox later states to Handy that CVH will accommodate me for the surgery which is not true. According to Mullaney and Deshpande, CVH does not allow any surgery or medical appointments unless done on the premises. Knox's perjury was not adequate to his professional training, judgment, decision, and evaluation of me. There is one thing that really bother me about Knox before, during, and after his testimony. Knox had the biggest grim and smirked at me before getting on the stand. I do not believe that kind of gesture is professional to say the least and rather childish. Knox smirk at me was that "I got you!" In Knox's assessment of me, he also relied on the

2 3

21 year old medical record that is passe. Knox's training was inadequate and was grossly negligent. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital*, April 3, 2002, (gross negligence and inadequate training). *Winsborrow v. Connecticut Valley Hospital*, August, 1999. (negligence of physicians). I did not authorize Knox or Fox to use any medical record of mine nor did I sign anything to authorize them to obtain that 21 year old medical record, thus violating my right to privacy. Based on the defendants inadequacy of professional training and their treatment of me during an evaluation that was less than professional but deliberate and with that deliberate judgment to send me to CVH based on a 21 year old medical record because they lack the training of professional judgment should not be given qualified immunity.

Defendant Deshpande, M.D.

1.  Deshpande was grossly negligent and was inadequate in her professional training, care and treatment of me, and exercised poor judgment.  Deshpande prescribed Olanzaphine for me to take for a mental disorder that I do not suffer from.  Deshpande did and absolutely rely on the 21 year old medical record and did in fact use the record to substantiate her negligent reasoning. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital*, April 3, 2002, (gross negligence and inadequate training).

2.  I did not authorize Deshpande nor did I sign any document authorizing the use of my 21 year old medical record.

3.  Deshpande did send me to AA as Social worker Kathy O'Neil violated my privacy

24

rights during a meeting of the medical team to tell the team of a old DUI in 1984.

O'Neil admits to violating my rights, however, with that information,  Deshpande

forced  me to go AA.  I do have evidence of being forced to attend AA meetings and

I do have a paper documenting my daily schedule of where I would be and what

meeting I would attend. *Patient's Rights The Grievance Process*, authored by Bill

Brady, Patient Advocate, GPD., 11/98, page 6.

4.  In  Deshpande relying on the passe medical record, she could have given me an

anti-depressant but did not do that.  I would not qualify for any federal funding for

my incarceration unless I was given a anti-psychotic and had a major mental defect

such as she writes borderline personality and paranoia with schizoid tendencies.

That was what is in the old medical record authored by Coric.  Thus, Deshpande

relied on the 21 year old medical record rather than re-evaluate me which is

inadequate in training, care and treatment of me, and exercises poor judgment.

5.  Deshpande relied on the record that she even used the same diagnose as my

release.  See Doc#1 Defendants Exhibit (A) , pages 154-160. Doc#1 page 3.

6.  In  Deshpande's statement that she saw me on August 5, 9, 19, 25 and September

1, 2, 9, and 15, 1999 is erroneous.

7.  Doc#1, page 3  Deshpande shows that she violated my privacy rights that are

protected, and phone Dr. Miller without my consent or authorization.  She continued

to phone Dr. Miller to stop the operation and have the operation performed when I

was discharged from CVH which violates Judge Handy's court stipulation.  Deshpande

also spoke to Mullaney regarding me surgery, which he also denied.  Mullaney

professes that it is not the policy of CVH granting surgery to patients and that Knox

had to right to guarantee that right to Judge Handy. Should I be granted the

surgery, I would be shackled into the hospital and shackled to the gurney which

is humiliating and does not withstand CVH's attestment that CVH treats its patients

with dignity. Doc#1 Exhib (A), Deshpande uses the same diagnose as the 21 year

old medical record which means that Deshpande lack training, judgment, did not

exercise professional treatment and care of me since she failed to re- evaluate me and

continue throughout my incarceration to depend solely and only on the 21 year old

medical document that is a fraud. *Patient's Rights The Grievance Process*,

authored by Bill Brady, GPD, Patient Advocate, 11/98, page 12. See also page

6. See Doc#1 Exhib (A) pages 2-4.

8. Deshpande in her assessment of me agrees with Kathy O'Neil to send me to

AA using the passe medical record. See page Doc #1 Defendants Exhibit (A),

pages 44 - 46.

9. On 8/10/99, Deshpande ordered Olanzphine for me. See Doc#1 Exhib (A),

page 70.

10. On 9/1/99, Deshpande increased the dosage of Olanzaphine. I could hardly

focus on what Olanzaphine I was given at that time much less to be given a higher

dosage impaired by thinking, judgment, and focusing more so. See Doc#1 Exhib.(A)

page 74. *Winsborrow v. Connecticut Valley Hospital*, August, 1999,

(negligence of physicians).

11.See page Doc #1 Exhib (A), page 70, Deshpande changes my olanzaphine to

8 pm which is ludicrous. I still was given the Olanzaphine in the morning with the

rest of my medication by the nurse.

12. On 8/10/99, Deshpande violates my privacy rights again and phones Dr, Miller without my consent or permission or without me signature on a release form. See Doc#1 Exhib (A) , page 98.

13. In Doc#1 Exhib(A), page 108, Deshpande or nursing staff enters into the record that my numerous complaints are of craving for alcohol which is a ludrious statement by the defendants. I was already sedated with olanzaphine which was quite enough for me to handle. I do not crave alcohol nor do I drink daily as erroneous portrayed by the defendants.

14. In Doc#1 Exhib (A), page 123, Deshpande still relies on the passe medical record dated 9/2/99.

15. I did not meet with Deshpande on the dates that she alleges. I did meet with her to get a physical exam where she noticed a lump on my right breast. I believe I met with Deshpande again to meet the entire medical team which consists mostly of the defendants, less O'Neil.

16. In my requests to meet the team weekly as other patients did, I was put off by Deshpande with a statement that she was too busy and moving Tues to Wed to Thurs and then to no day at all until I believe to be Sept 1, 1999. I was treated with indifference than other patients that saw the "team" weekly. Therefore, Deshpande in exercising her professional judgment, care and treatment, and her training in making decisions as to my care are inadequate in training. Deshpande simply warehoused me. *Winsborrow v. Connecticut Valley Hospital,* August,

27

1999. (negligence of physicians).

17.  In looking at the defendants Exhibit (A), Deshpande merely makes notations, however, it does not state that she met with me as she allege to.

18.  Deshpande states she sent me to Dr. Carles for psychological testing which took a great deal of time.  Carles contented that she was too busy.  At the time of finally taking the test, I saw Carles only twice and I do mean twice.  I was under the influence of Olanzaphine with impaired my thinking and judgment, thus, I would not do well on the testing as I could not think clearly due to the medication.  If Carles contends that I saw her on August 15, 16, 18, and 10, 1999 is a lie.  I met with her only twice for the testing.  I did meet with Carles once a week for group anger management which was even a bigger joke and fraud.

19.  I do have an exhibit of what hand-outs Carles gave to the patients which is about 5 questions with multiple choice.  That took about 5 minutes, and the rest of the hour was spent play a game like Wheel of Fortune where patients got prizes.

20.  In being tested by Carles, she states that "you see what you see" in looking at the ink blots etc.

21.  Deshpande states she did not rely on my 21 or (18) year old medical record and relied on her peers (other medical professionals) with their opinion and examination, however, the opinion of the professionals still go back to the old medical record as Deshpande states is the "complete medical record."   In her assessment she uses the old medical record to diagnose mixed personality which is the same as borderline personality conflict and borderline paranoia.  These diagnosis were are are in the 21 year old medical record.  Deshpande continued to exercise poor

judgment, lack of professional training, and inadequate training in her care and treatment of me while at CVH. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital,* April 3, 2002. (gross negligence and inadequate training).

22. Deshpande states that I stated that Olanzaphine "took the edge off" is a bold face lie. I never stated that, and if I stated anything to Deshpande it would be that I could not concentrate and was hungry and sleepy which are the side affects. Had I not taken Olanzaphine, CVH would had written to Judge Handy stating I was non-complaint and be detained and further incarcerated until I did take the drug. Deshpande violating my right not to take the drug remains a catch-22 situation as the Supreme Court states that I do not have to take the medication, but CVH, will not release me unless I take the drug. This is verified by many former patients who remained incarcerated until they took the drug. The other reason is that CVH would not get that $600 plus federal funding to pay for my incarceration that CVH states that pays for over-time as CVH is understaffed.

23. I did not meet with a Dr. Callinan on July 28, 1999 upon admission. The only person I did meet was Dr. Franco who stated that I would be released in two weeks.

24. Dr. Callinan's diagnose is based on the 21 year old medical record offered to him by defendant Deshpande. So the statement that I met with Dr. Callinan is another bald face lie by the defendants.

25. The literature I got on Olanzaphine was from nurse Fran and not from Deshpande and was not acceptable to me. In giving this Court previous Exhibits, I submitted CVH's document that was given to me on Olanzaphine. I also submitted a document

by the VA Medical Center which differs greatly with CVH's version of the drug.

CVH contends that Olanzaphine is for mood swings. The VA document contends

that Olanzaphine is for schizophrenia. And that is substantial difference. Thus, CVH

lied to me about the drug Olanzaphine. I do not suffer from schizophrenia so why

would CVH give me such a harmful drug? To get those federal funding dollars.

Again, Deshpande is poor in exercising her professional judgment, care and treatment

of me that is not only negligent but malpractice.

26. I already answered what part of Trivial I took prescribed by Coric and Dr. Riggs

and that was the depressant. Riggs was my VA doctor for a year when he was

there which was not often. I have never taken any anti-psychotic in my entire life

other than the Olanzaphine. I mentioned that in the early 80's there were not many

anti-depressants on the market. In being a veteran, I rely on what the VA has

available and I was prescribed the other half of Trivial which would be the anti-

depressant.

27. Deshpande did  in fact violate on a continuous basis violate my privacy rights.

I did not sign a release for Deshpande to continue to call Dr. Miller day after day.

*Patients' Right The Grievance Process*, authored by Bill Brady, GPD, Patient

Advocate, 11/98, page 6.

28. Deshpande states that I was released on Sept. 17, 1999. Again seem somewhat

incompetent, as I was released on Sept 17, 1999.

29. Desphande did not display professional judgment in her care and treatment of

me but rather violated my privacy rights, and relied on a 21 year old medical record

as she was unable to or lack training in her profession to make sound judgments

and decisions of caring and her treatment of me which is grossly inadequate and

negligent with malpractice in forcing me to take a anti-psychotic that impaired my

thinking and judgment.  The was cruel. If Deshpande had re-evaluated me while at

CVH rather than use the passe medical record, she would have come up with the

same diagnose as Dr. Pinchay.  Pinchay used the old record as a reference and noted

that there is a history of (h/o) schizophrenia but I have not experienced that in the last

three years of his seeing me at the Dept. of Mental Health and Addiction Services.

Pinchay's final evaluation is noted as PTSD (post traumatic stress disorder).

Deshpande did not evaluate me, thus, relied on an old medical record to treat me.

Deshpande, based on her inadequacy of training, judgment of professional care

and training in her treatment of me should not be given qualified immunity.


Defendant Mullaney

1.  In reading Mullaney's argument, he states he gave the grievances to Bill Brady

who  in turn does not investigate the grievance but rather reviews the plaintiff's

medical record, discussed the allegations with the treatment team and spoke to

me regarding the allegations.  Had Brady investigated my grievances, he would have

noted in the nurses medical notations that in the defendants Exhibit (A), Doc#1,

page 84, on 8/2/99 there is a incident report of me being sexually harassed.  In

Doc#1, page 90, 8/3/99 a notation at 11:10 pm is the assault report. Doce #1 on

page 90, 8/4/99, the nurses are discussing the confidentiality of other patients who

either have liver or AID, etc.   In Doce#1, page 87, Carles on 8/3/99 a patient

complaint meeting at ll:45am regarding the assault of me by Guerra.  In Doc#1,

page 93, Dr. Zimmerman treats me for the assault and notes another bald face lie that I stated "he was going down". At least the defendants are imaginative. I stated that I would sue for the injuries and the non-treatment of injuries that occurred as a result of the assault by Guerra. In Doc#1 page 113, it is noted that I was waiting for Brady with Alice Smith, Fran Carara present regarding my complaints. Doc#1, page 111, it is noted that I have numbness in my right arm from the assault. Doc#1, page 119, it is noted that I requested to speak to Mullaney about the sexual activity on the ward of which he did nothing about but assigned the task to a Alice Smith who still did nothing. Doc#1, page 107, 8/19 HIV patient Rollin spit on me and threatened me bodily harm. Rollin spit on me twice, once on the unit and the other time in the dining area. Doc#1, page 108, Guard that took me to my appointment for a biopsy abused me, refused to unshackle me to have the biopsy done, pulled my legs and injured the left knee that I had just had two surgery's on in June of 1999.

2. It appears that Brady only sought to look at a medical record that was 21 years old and felt that by reading of borderline personality, paranoia, etc, he based his decision that my grievances were unwarranted because of the passe medical record.

3. Mullaney, as a professional did not contact Brady or Smith to see if the problems and my grievances have been addressed which they were not addressed but ignored and swept under the carpet.

4. Brady states he "continually" used my medical record to base he opinion of unwarranted grievances were false. Brady as a patient advocate supported

32

management and not the patients whom is initially suppose to represent.

5. I never refused to name witnesses to Brady as he alleges to support my claims.

6. Mullaney states that I filed over 100 grievances which is not possible and is an exaggerated allegation. In submitting copies of my grievances to this Court, I am sure that is not 100 grievances. I counted 19 grievances less one grievance regarding the assault that was taken away from me, therefore there should had been 20 grievances and not the exaggerated 100 which is ludrious.

7. Mullaney met with Alice Smith daily in regards to the restoration unit and the spoke to Mullaney about the sexual activity and again did nothing. Mullaney as a trained professional lack judgment in his care and treatment of me that was inadequate and negligent.

8. Mullaney states I got the back board 5 days after my arrival which is not true. Doc#1, page 69, 8/2/99, the back board was ordered as the warehouse did not have any back boards in stock.

9. Mullaney did order new beds for the patients as they had urine and feces on them including a hole in the middle of the mattress. I did not get a new bed as I was required to carry the bed to the nurses station and I was unable to do that task. No one offered to help me get a new bed either.

10. Mullaney did allow me to starve. In taking Olanzaphine, the drug side affect increases the appetite where I did gain 45 lbs. by living off of cookies and junk food that I had to pay for myself.

11. The nutritionist was on vacation until the very end when I was getting released. Doc#1, page 61, food - dairy products; page 67, diet - regular; page 109, I was

33

not agitate and angry with kitchen staff. My dinners had onions all over the plate of which I am allergic to - a black server put the onions all over my plate which at that time I was denied dining privileges which is not my fault; page 91, a party that is held once a month and the group picked Chinese which all the food had onions so I had no dinner that night either.

12. For lunch I had only an apple and a orange for lunch while other patients had hamburgers, hot dogs, roast beef, etc.

13. I was denied my inhaler by the third shift who was too busy playing monopoly or sleeping during their shift. I asked the 3rd shift nurse many times as I would have my asthma attacks around or between 3am to 4am. The nurse told me to wait for 1st shift who would ask me why 3rd shift did not give me the inhaler and I simply answered because they were too busy playing monopoly or laughing or sleeping.

14. As to the defendants notation of my use of the inhaler, I was given a puff of the inhaler in the morning, at noon, and at night meds. I was denied my inhaler during a serious crisis that could have been fatal. *Bell v. Whiting Forensic Division of Connecticut Valley Hospital,* April 3, 2002. (gross negligence and inadequate training).

15. Mullaney states that I received basic soap on 8/16/99. I never received any soap of any kind from CVH ever. I did get some soap from my visitors. The only soap I did receive was a medicated shampoo that I got to use once a week. However, my scalp did bleed as I still was required to use the soap in the shower dispenser that is industrial when my soap was gone. My skin and face had a rash

34

on it.  According to nurse Fran, the soap that I so called received, she told me  that

soap was on back order as the warehouse was out of basic soap.  And I  never ever

got any basic soap.  The defendants probably gave the soap to someone else other

than me as I did not get any soap.

16.  I was transported to some medical appointments and I never did refuse to go

to any appointments.  In going for the biopsy, the guard would not unshackle me

so the doctor could take the biopsy.  The doctor then told me to return to her when

I got out of CVH.  The guard continue to stare at my bare breasts while on the

examination table.

17.    Mullaney should not be given qualified immunity as he failed to act or use

professional judgment in the care and treatment of me, exercised poor judgment in

his decisions to allow the sexual activity and conduct to continue, and to knowingly

put me in a restoration unit that is co-ed in that CVH created the danger that could

harm an individual such as myself such as assault, sexual groping and harassment

that Mullaney failed to control and dismissed my complaints based on a 21 year old

medical record that is passe and non- revelant at hand and that I should had been

re-evaluated by the medical team.  *Bell v. Whiting Forensic Division of*

*Connecticut Valley Hospital,*  April 3, 2002. (negligence and inadequate

training).  *Beckford v. Irvin*, 49 F Supp., 2nd 170(W.D.N.Y., 1999) ADA -

discrimination of disabilities.


Defendants Franco

1.  Carles did not see me on August 15, 16, 18 and 20, 1999.  She only saw me

twice and she did not see me a week after Puglisi left on his vacation. It took Carles much longer as she insisted that she was too busy. I actually bugged Carles as I wanted the tests as soon as possible as I wanted out of CVH. Therefore, the statement by Carles is a bald face lie. I saw her twice while under the influence of a drug prescribed by Deshpande.

2. Franco only reviewed the progress of me regularly but he did not see me weekly as required as part of condition that I see a forensic monitor once a week.

3. I spoke to Franco on my arrival to CVH July 29, 1999 and saw him another time on Sept 2, 1999. I did not see Franco as required by a forensic monitor, thus, I was merely warehouse during my incarceration at CVH.

4. I saw Franco twice as well as seeing Carles twice professionally. I was not seen by either Franco or Carles on six different occasions. The defendant can not even recall the actual dates he did see me.

5. I pestered Franco around the end of August as I wanted out of CVH and asked him to give me the competency test. About a week before Puglisi's arrival to CVH, Franco only gave me part of the examine as he would not release me even though he is the senior psychologist at CVH. Franco would only release me when Puglisi returned. This in itself is poor judgment in the care and treatment of me and clearly is seen as inadequate in training as to Franco's professional judgment, decisions, and his treatment and care of me.

6. Doc# 1, page 114, 8/25/99, Franco is to give me the competency test that week but continue to put it off as he is too busy, but actually he is waiting for Puglisi to give me the test. Franco acted in poor judgment by his own statement that he would

36

"cover for Puglisi" during Puglisi's absence.  That statement can be found in Doc#1

Exhib (A) page 105.  8/19/99.

7.  In meeting Franco on my day of arrival, Franco stated that I would be at CVH

for 2 weeks and that I appeared competent to him.

8.  What is wrong here is that I was assigned to Puglisi who went on a long vacation

that extended my stay at CVH.  I believe the intention was to reap in the $600 plus

per day to pay for over-time as CVH was understaffed.

9.  Franco's standard of professional judgment in his decisions of his treatment and

care of me were inadequate and grossly negligent.  Franco in his decisions, gave me

false hope by stating that I was competent as well as Deshpande stated that also.

10.  Franco admits to covering for Puglisi which is actually warehousing me during

the extended incarceration at CVH which is fraudulent.  Franco should not be

given qualified immunity as in professional judgment in treatment and care of me

was inadequate in training and grossly negligent.  *Bell v. Whiting Forensic Division

of Connecticut Valley Hospital,* April 3, 2002. (negligence and inadequate

training).


Defendant Puglisi

1.  Contrary to Puglisi's statement, he did meet me on July 29th of 1999, the second

day of being at CVH.  He asked me how I felt and he stated that CVH is not my

kind of place to be and I agreed.

2.  Puglisi did give me a competency test that day.  I remember quite well.  I believe

that Puglisi is somewhat confused with dates as he continues to misconstrue each

date with another date and getting mixed up in the process. Puglisi seems somewhat

incompetent himself in his testimony and sworn affidavit.

3. Puglisi never informed me of his vacation. The nursing staff informed me.

Doc#1, page 94, 8/8/99, Puglisi notes that he informed me but he did not inform me

of his lengthy. If he had informed me, I would of requested at that time a new

forensic monitor and immediately. I did not become aware of his vacation until much

later.

4. On Sept 9/9/1999 Puglisi gave me the competency test with an intern. Puglisi

states he gave me the test on Sept 8/ 1999. Doc#1, page 130. Puglisi continues

to get confused of the correct dates in which he states he performed or took

action such as a competency.

5. Puglisi states that I was released on Sept, 17, 1999. I was released on Sept. 16,

1999. And I would really remember which date I actually got out of that hell hole

CVH and the correct date is Sept 16, 1999. See Doc#1, page 5 - the release

date is 9/16/99.

6. Puglisi did mention a wife, but if he does not have one, well perhaps I was

mistaken. But I doubt it.

7. Puglisi did inflict injury on me, emotional duress. He took a lengthy that extended

my stay at CVH. It was unnecessary to hold me for such an extended time.

8. Puglisi did write down my diet for regular food as I witnessed him writing is

down and he asked me if regular food was ok. Puglisi seems at odds with his sworn

statements as he can not recall anything and what Puglisi does recall, the dates

are wrong.  Had Puglisi be given a competency test, he would definitely fail.

9.  Puglisi did not exercise professional judgment in accordance with the standards

of practice and legal procedures, but was not present for most of my incarceration

thus Puglisi was grossly negligent and his training was inadequate to meet any

standards of practice and legal procedure.  By Puglisi's own inadequate and

poor judgment of professionalism, he should not be permitted qualified immunity.

*Bell v. Whiting Forensic  Division of Connecticut Valley Hospital*, April 3, 2003.

(gross negligence and inadequate training).

CONCLUSION

    For the foregoing reason, the plaintiff move that the Court find that summary

judgment should be granted against the defendants on all her claims against the

defendants together with costs and such further relief as this Court may deem

just proper and equitable.


Date:  February 29, 2004

                                        2/29/04

        BY:  ELIZABETH A. MARCZESKI
             206 B Nautilus Dr. #104
             New London, CT  06320
             (860) 440-3541

39

CERTIFICATION

I hereby certify that a copy of the foregoing was mailed by U.S. Mail,

certified mail with return receipt #7003 1680 0006 5724 1040 on this 1st day of

March, 2004, to the following.


Daniel Shapiro
AAG
55 Elm St., 5th Floor
Hartford, CT  06141-0120

Elizabeth Marczeski
206 B Nautilus Dr. #104
New London, CT  06320
(860) 440-3541