UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR -1  P 2: 07

US DISTRICT COURT
BRIDGEPORT CT

ELIZABETH A. MARCZESKI  :  CIVIL NO. 3:01CV01437 (AHN)(HBF)
   Plaintiff,  :

v.

SUSAN B. HANDY, ET. AT.,  :  FEBRUARY 28, 2004
   Defendants.

Memorandum of Defendants Exhibits A through M and Memorandum of
Plaintiff's own Exhibits

1. In addressing the defendants motion for their summary judgment, I did the best I could to my ability. I do not believe that I had adequate time to address the issue which was 3 weeks. The defendants on the other hand had a handful of extensions to seek new strategy.

2. In addressing the defendants affidavits and exhibits, I read all 4 inches of the submission.

DEFENDANT'S EXHIBIT (A)

3. Referring to Defendant's Exhibit (A), Doc#1, I have further comment.

a. Doc#1 is confusing as in several places the bed board was ordered on 8/2/99 and also on 8/4/99.

b. The defendants were deliberate in that they relied on an old medical record that is 21 years old rather than re-evaluate me since they claim to be professionals.

c. Doc#1, page 10 at the top of the page, note that CVH provides religious services and I was denied to even speak to a priest, rabbi, or minister.

d. My rights were violated by all defendants and I continue to repeat that by being

Courtesy Copy: Honorable H.B. Fitzsimmons

1

assigned to Puglisi who went on a lengthy vacation, it was deliberate that I be assigned to him that would prolong and extend my incarceration at CVH. It was premeditated and deliberate. If it was not deliberate, then why assign me to a forensic monitor who was going on a vacation and was merely warehoused. I saw no monitor like other patients once a week, thus, I was treated with indifference.

e. Most and all patients assigned to a monitor see their monitor once a week to review and understand what is means to be able to assist you attorney and know the charges against one's self.

f. Doc#1, Exhibit (A) of defendants, page 54, the defendants were writing down to assist me after surgery, however, Mullaney denied for me to have the surgery which was deliberate. Mullaney violated a stipulation of me going to CVH as well as Deshpande by denying me the right to have my implant.

g. Again, See Doc#, page 57, surgery.- I am being asked questions of self-assessment regarding my surgery.

h. I was referred to a cooking group and that never happened. I was denied simple programs that were available to other. I was also denied to use the library on a permanent basis.

i. Doc#1, Carles results of her test which I took while under an anti-psychotic and my thinking was impaired. page 62.

j. Doc#1, page 71, was taken to dentist and shackled by guards, stumbled as I was unable to stand without cane that was taken away from me.

k. Doc#1, I received NO soap. I did not get an basic soap and CVH must have given the soap to someone else. I needed the soap but never got it.

l. Doc#1, page 73, shackled. to doctor. 8/24/99

m. Doc#1, page 70, 8/13/99, shackled to dentist.

n. Doc#1, page 88, shackled on 8/3/99 to go get mammogram.

o. Doc#1, page 95, 8/6/99 - Bernise was instructor for competency education once a week. She writes into record: " plaintiff is alert, pleasant, attends the competency meetings, I am intelligent, articulate, good, loaned her my book on 'How to Be Your Own Lawyer', and fairly well, that I am competent. This is 8/6/99. I arrived at CVH on July 28, 1999. Thus, CVH continued to hold me like a hostage until Puglisi returned from his lengthy trip.

p. Doc#1, page 96, it is written that I socialize well, and no complaints on this day. 8/7/99.

q. Doc#1, 8/9/99, page 96, saw and had visitors. later I would be denied in having any visitors. O'Neil told my visitors not to visit me anymore which was upsetting and a violation of my rights.

r. Doc#1, page 96, entered that I was railroaded by Judge Handy but I continue to state that I was railroaded by Diana Law and Butler who manipulated the justice system meaning the prosecutor and the police and to convincing them in the beginning that I was mentally ill.

s. Doc#1, page 102, no food

t. Doc#1, page 104, I spoke to Legal Services at CVH, McKeon. 8/16/99 - I was also told that I was competent to be able to do this at home rather than be incarcerated but is was obvious that someone wanted me to do time or rather get

3

time served at CVH which I did earn- 52 days of timed served.

u. Doc#1, page 104, 8/17/99, I could not go to any VA medical appointments had unless I was shackled. Those appointments took me 2 years to get as I was on a waiting list.

v. Doc#1, page 104, mammogram, 2 pm, shackled.

w. Doc#1, page 106, injuries and threats by patients. I was spit on twice. Carles called a Dr. Patch(?) regarding Guerra who saw him a 2am in the morning. This was in regard to Guerra's sexual groping and harassment of me and other female inmates. 8/19/99.

x. Doc#1, page 115, no complaints. 8/26/99

y. Doc#1, page 117, scratch cornea accidentally with plastic fork, shackled and sent to doctor. 8/27/99.

z. Doc#1, page 119, 8/31/99, patient closed the door on my left knee that just had two surgeries. given an ice pack.

aa. Doc#1, 8/31/99, page 120, Carles ludrious bald face lie where she states that " I am am 1/2 genius..." unable to read rest of comment.

bb. Doc#1, page 120, 9/1/99, I was denied to use the toilet by 3rd shift black male at 11 pm, also the same black man would go to Margaret's room and mine and put his lips about 1/16" near her and my lips during his rounds. He did this every night and I felt threatened.

cc. Doc#1, page 120, 9/1/99, cried because CVH would not let me go until Puglisi returned from his vacation. That day I felt suicidal.

dd. Doc#1, page 120, I did plan to stop the tenormin (beta-blocker) which would

4

give me a heart attach or stroke. I had not yet seen Franco to get a competency test.

ee. Doc #1, page 121, Team 9/11/99 argued with medical team as they never ever and I mean never saw me like they saw other patients at the unit. I continue to be treated with indifference. And it was deliberate that the defendants merely warehoused

ff. Doc#1, page 124, 9/2/99, Franco talks to me and decides to give me one side only of the competency.

gg. Doc#1, page 127, 9/4/99, addressing complaints

hh. Doc#1, page 128, 9/5/99, staff took my cigarettes but was reimbursed by Alice Smith by petty cash.

ii. Doc#1, page 165, 8/16/99, rash and bleeding of scalp from washing with industrial soap.

jj. Doc#1, page 167, 8/30/99, door closed on left knee

kk. Doc#1, page 179, treatment plan not sign by medical team. Defendants continue to use the 21 year old medical record with mixed personality disorder.

ll. Doc#1, page 130, Puglisi states that I am competent but waits until Sept 16, 1999 to release me. Puglisi states I was released on Sept 17, 1999.

DEFENDANT'S EXHIBIT (B) and (C)

1. Exhibit (B) and (C) are a continuation of the 21 year old medical record that is passe and prejudicial as the defendants failed in their professional capacity to re-evaluate me which in turn was a result of the defendants inadequate training in their treatment and care of me that was grossly negligent.

2. I have argued the point in matter but continue to object as the medical is not up-to-date as required by Connecticut Mental Health Law, especially regarding incarcerated inmates such as myself. One case in question was at the Corrigan prison in Montiville where the nurse failed to update a prisoners mental health record every 6 months, thus, the nurse was negligent, as the prisoner hung himself. The defendants failed to re-evaluate me that most likely would have kept me from being falsely incarcerated at CVH.

DEFENDANT'S EXHIBIT (D) TO (M)

Fox

1. Fox saw me for 15 minutes and now for one hour.

2. Fox was deliberate in his badgering of me to fail the competency.

3. Fox displayed anger from obviously having a hard time at Corrigan prison and took his anger out on me.

4. I do not feel I failed the competency, but as I stated, at first glance at the defendants, I knew at that time, I was going to be incarcerated somewhere.

5. I will never forget that look.

6. The defendants were late and perhaps being late, allotted the late time to my competency evaluation. I was there for 15 minutes and no longer. That how fast it took for the defendants to find me incompetent.

7. Watkins, in trying to enforce a Stipulation by the court, did in fact relate to me that Fox did phone her and Fox confessed to badgering me. And Fox did badger me and he was excessly angry.

8. The defendants were deliberate in the method of anger to methoditicly make me

fail the competency by badgering and misplace anger of themselves, which violates my right to a fair hearing and test. The defendant lacks in his professional training to give me a proper test without badgerment. The defendant failed to ask me the five words that they told me to remember. I guess with so much anger, the defendants forgot the words they were to ask me to recall. The defendant did not exercise professional judgment based on truing and experience and was deliberate in giving me the competency test to fail. Fox in his lack of judgment threatened to send me to CVH if I did not sign a release for my VA medical record. That is a violation of my right to privacy.

Knox

1. Knox sat behind a 3-ring binder and did not utter one word and acted fearful of me. I did not see the defendant for 1 hour. It was 15 minutes. If it had been an hour, I would had known, as the test went to quickly, out the door I went. An hour with the defendants Knox and Fox, I would remember due to their acrimonious anger towards me.

2. Knox used a 21 year old medical document that by Connecticut Mental Health Statue is of no value. The record is too old and is a fraud.

3. Knox did not exercise good judgment based on his training and experience. He violated my right to privacy in getting such a document that is so passe and got the document from the prosecutor whom I have never given anyone permission to release. Knox was deliberate in manner to contribute to Fox's badgering of me in order to fail the test. Knox did not exercise good professional judgment and

was inadequate in his training to the point that he had no one question for me. This makes me believe if he had not questions for me, then it was merely a one-way street to CVH.

4. Knox did perjure himself to Judge Handy by stating the CVH would allow me to have my implant, but that was false. CVH never gave him permission. He smirked and grinned at me the whole time and it must had been joyous for him to have me incarcerated for his participation of deliberately forcing me to fail the competency test by badgering. My right to privacy was violated and Knox's actions were deliberate.

Puglisi

1. Exhibit B is a medical record that is passe and by statue of the Dept. of Mental Health, the record is of not value. The State Mental Health Law, my mental medical record must be up dated every 6 months.

2. Puglisi still remains confused. At one point he states he saw me on July 28, 1999, then he changes his mind and states he saw me on July 30, 1999. Puglisi saw me on July 28, 1999 and not the 29th or the 30th of July.

3. Puglisi gave me a competency test and I passed.

4. Puglisi now states he saw me on August 6, 1999, but his notation I think is the 8th of August.

5. Puglisi as with Deshpande, wanted me on Olanzaphine which impaired my thinking and did not improve and make me think clearly.

6. Franco covered for Puglisi which meant I was warehoused as I saw no one.

8

All other patients on the unit saw their forensic monitor once a week. I was treated with indifference and was discriminated against.

7. I did not see Dr. Carles on all those dates. I saw Carles only twice and that was for testing. The defendants do not appear to be consistent but rather confused which makes me want to challenge their own competence.

8. During the competency test of me on Sept 9, 1999 not Sept 8, 1999 as Puglisi states, he asked me if the medication helped me think more clearly and with a intern witness present, I said "no!".

9. Puglisi also told me to forget CVH and take this as a learning experience. I can no do that as I lost 52 days of my life and lived in hell for those 52 days.

10. Puglisi did write down 'regular' on my diet. Now Puglisi state he returned to CT but with no specific date. As I continue to state, Puglisi is confused and appears in a daze.

11. Puglisi did not exercise good judgment based on training, assessments, evaluations, and treatment and care of me. Puglisi was gone for most of the entire time I was incarcerated. Puglisi can not even get the dates correct to when he saw me and when he gave me the competency test. Puglisi violated my 1st amendment right to freedom by extending my stay at CVH due to his lengthy vacation. Puglisi lacks any adequate training skills and was not present to do any assessing when he was in India. Puglisi was deliberate in assigning me as his monitor when he knew he would be on a long vacation. Puglisi left me with no monitor to see weekly and merely warehoused me. Puglisi was deliberate in extending my stay at CVH until he returned. I should had been re-assigned to

a different forensic monitor but that did not happen. This act by Puglisi was willful and intentional.

Defendant Deshpande

1. Deshpande did not know the former defendants Diana Law and Butler. Had she known them, she would agree with me that the point in having me arrest was to prevent her from getting fired from MCI as she used corporate own equipment for personal gain while at work for MCI and solicited money from me for a publishing company that did not exist.

2. Judge Handy put my incarceration to 2 weeks to 60 days and no more than 60 days. It was deliberate of Deshpande to hold me at CVH for 60 days for the $600 plus per day to pay for over-time with federal funding that pays for my incarceration.

3. Again, Carles saw me twice and my thinking was impaired by the prescribed medication that Deshpande ordered for me to take. I had no choice in the matter. At one point, I received a paper from a nurse regarding the medication and no one else discussed the matter with me including Deshpande. Everyone on the unit took Olanzaphine so we would sleep and eat and would not be a threat to anyone because the drug makes me feel drugged.

4. Deshpande continue to use to passe 21 year old medical record that has no value since it does not meet the standards of the Dept. of Mental Health where I or anyone else must be re-assessed every 6 months.

5. Deshpande reviewed the entire record which means she continued to use the 21 year old record.

6. Deshpande did not exercise good professional judgment based upon her training and experience. Deshpande did not monitor me as she continue to tell me she was too busy to actually see anyone at any time.

7. Deshpande did not exercise good judgment in her treatment and care of me and lacked not only adequate training but was negligent in giving me an anti-psychotic for a mental disorder that I do not have. It was deliberate that she prescribed the medication to me and if I did not take the drug, I would not be released from CVH and would remain there until I took the medication.

8. Deshpande continues to diagnosis me a mixed personality and borderline paranoia which is identical to the 21 year old medical record that she relied on.

9. In taking Trivial, I only was prescribed the anti-depressant of the medication as I stated, there were not many anti-depressants during the early 1980;s.

10. Deshpande did force me to go to AA, as O'Neil used what information about me that is on the computer that I had a DUI in 1984. Deshpande formulated my schedule and circled AA meetings.

11. Deshpande did not meet with me on August 5, 9, 19, 25 and Sept 1,2, 9, and 15, 0f 1999. She always told me she was too busy and pushed my meeting the team to Tues, to Wed, to Thur to no days at all, thus, I was warehoused.

16. Deshpande was negligent in prescribing the medication for me which is malpractice. She continued throughout my incarceration to use the 21 year old medical record. Had she re-evaluated as Dr. Pinchay, Deshpande would had assessed me with PTSD.

Defendant Franco

1. Franco states he monitored me from July 28, 1999 to Sept 17, 1999. I arrival at CVH on July 28, 1999 and was released on Sept 16, 1999. Puglisi has me being released on Sept 17, 1999. The defendants Exhibit (A) page 5, notes that I was released on Sept 16, 1999.

2. Again with the conspiracy theory. I hate repeating myself. It was fraud. I was arrested by Diana Law and Butler as MCI threatened to fire her if I was not arrested and prosecuted. Law tells MCI that I harassed her when actually she was stalking and harassing me. When I realized the publishing company was a fraud, I told Law that I would sue. Law phoned me and threatened to have me arrested and she did. Along the way, she convinced the police and prosecutor that I was mentally ill. Law and Butler were found liable for harassment, fraud, and emotional duress.

3. Again, Franco states that Puglisi returned on August 9, 1999. I am not sure who actually came and who was gone because the defendants are not sure themselves and each defendants has a different date on when Puglisi went on vacation and when he returned.

4. Franco now states from line 15 of his affidavit that Puglisi was on vacation from Aug 8 to Sept 9, 1999. On line 18, Franco states that Puglisi is on vacation from Aug 8 to Sept 6, 1999.

5. Again, Dr. Carles did not see me in all those dates she states. I only saw Carles twice for testing.

6. Franco states he met me on Aug 27 after the test, this is not true. Franco only

made a notation in my medical record, page 117.

7. Franco is also confused, I merely stated that the police falsely arrested me and I proved that beyond any doubt by proving the arrest and complaint against me by Diana Law to be false by her own admissions.

8. Franco states Puglisi met me on Sept 8, 1999 for a competency. This is not true. Puglisi tested me on Sept 9, 1999. Puglisi was still on vacation.

9. Franco states on line 24 of his Affidavit that I was now released on Sept 17, 1999 but was released on Sept 16, 1999.

10. Franco did not exercise good professional judgment based on training and experience and lack the adequate training in the care and treatment of me while at CVH. Franco refused to release me basing my incarceration on a 21 year old medical document that does not meet the Dept of Mental Health standards of up dating my medical records every 6 months. Franco violated my 1st amendment right to freedom but covering for Puglisi who was on vacation and would not release me until Puglisi's return.

Defendants Mullaney

1. Mullaney did absolutely nothing and merely passed on my grievances over to a Bill Brady who yet did nothing but read my 21 year old medical record and decided that based on the record, nothing I did say or complaint about would be valid to him.

2. The only thing Mullaney did was get new beds for the unit but I did not get a

bed as I could not lift the bed to get it to the nurses station to receive a new bed.

3. Mullaney simply ignored my grievances and allowed the sexual activity to continue on the unit. In having a co-ed unit, CVH created the danger and could provide no safety to an individual such as myself to be unharmed.

4. Mullaney co-authorized the Patients Right The Grievance Process, and violated my rights of not being able to see a minister, priest or rabbi.

5. Mullaney is much involved with the restoration unit as he see Alice Smith each morning to consult about any issues regarding the unit.

6. Mullaney simply dismisses the sexual activity and allows it to continue.

7. Mullaney violated my right to protection under the State statue as I was involuntary incarcerated.

8. Mullany did not have good professional judgment in his care and treatment of me and further subjected me to actions of assault, sexual groping and harassment. Mullaney violated my right to freedom and to be protected from harm under the law.

Bill Brady

1. I object to any input Brady would offer as it is prejudicial and should only be entered as a witness.

2. In a simple matter, Brady did nothing for me. I only reviewed my 21 year old medical record, and based on it content, decided that I had no creditablitlity.

3. Brady did phone me after my release and was shouting on the phone as to why am I doing this to CVH. The only statement I can make is that, why did CVH do what they did to me for 52 days.

4. I have nothing to add to Brady's Affidavit as he is merely as witness for trial and should not be entered input for the defendants through the defendants counsel. It appears unethical Brady is not even a defendant. Brady is actually for management. Like Deshpande, she stated that I was competent, but her hands were tied from up-stairs, meaning Mullaney. Brady is not a patient advocate, he supports management. Brady did nothing in terms of assisting or helping.

EXHIBIT (L) AND (M)

1. Exhibit (L) is an affidavit by Dr. Pinchay which is not signed nor is it notarized.

2. I have documentation that I have seen Dr. Pinchay but I again question, counsel for the defendants using my witness to enter affidavits who are not defendants and are merely witnesses for trial.

3. Exhibit (K) is McKeon of whom I was told to contact by social worker O'Neil. I did meet with McKeon and have her business card.

4. I do not understand why counsel for the defendants want to enter an affidavit of my witnesses that are for trial purposes.

5. McKeon did not sign nor notarized her affidavit.

EXHIBIT (M)

1. Exhibit (M) is my expertise list of which counsel for the defendants has contacted without my knowledge or authorization. I find that intimidating and somewhat unethical.

PLAINTIFF'S SUBMISSION OF EXHIBIT (A)

1. In submitting exhibit (A), I read through the document that contradict the

defendants exhibits.

2. I have been with the Dept. of Mental Health and Addiction since being referred to them by CVH. I only continue going there to prove my point that the defendants were wrong in the mental assessment of me and that they should not had given me the anti-psychotic that I still continue to state that CVH subjected me to cruel and unusual punishment that was deliberate and did not merit.

3. I will refer to my exhibit a Exhib A.

a. Exhib A, page 6, after being with the Dept of Mental Health for 3 years, page 6 shows there is no substance abuse as proclaimed by the defendants especially Deshpande who made me go to AA.

b. Page 11, it shows that I am sensitive to onions and they make me vomit.

c. page 12, that I need the cane for mobility.

d. page 17, pain in legs and back

e. page 18, I am not required nor was it requested that I be on medication for any mental defect.

f. page 17, Pichay makes evaluates me as having a former history of schizophrenia but have PTSD and there is no active diagnosis. Schizophrenia is forever and I am fortunate not to suffer from the mental disorder.

g. page 27, legs- getting a brace for my left leg that I fractured.

h. page 28, acceptance of transfer to a new social worker.

i. page 29, states that I am able to manage my finances and so forth without a trustee.

k. page 32, shows that I was upset over the abuse of me while at CVH.

l. page 33, no meds required.

m. page 34, issue of depression

n. page 35, no mental illness

o. page 36, I am allergic to carpet and rugs

p. page 40, Dept of Mental Health paid 1/2 to my 1/2 for a back board.

q. page 41, visit to VA in Newington, CT, found lump in side of neck and growth.

r. page 42, discussion of anti-depressants due to stress.

s. page 51, the police harassing me as I filed a civil action against them for the false arrest and the attempt to re-arrest me for having the U.S. Marshal server them a summons further back pain..

t. page 52, saw a neurologist regarding my hand and back and they want to operate on my spine.

u. page 54, leg, back pain due to back board...not as good as CVH...is plastic.

v. page 55, transference of Judge Handy and was angry as she reminds me of my abusive mother.

w. page 56, Pichay, 7/24/02, states that I am reality oriented, no clinical depression, no medication is warranted or required and that I am normal.

x. page 57, Pichay, 10/7/02, met with him and no need for medication.

y. page 57, leg, back, MRI, CAT Scan on eyes, Dept of Mental Health furnished transportation.

z. page 58, police harassment and their following of me all over New London.

aa. page 61, Shipiro continues to ask for extensions and delays.

bb. page 64, states that I must have made an impact on CVH, Shapiro is wearing me down with continuos delays, help with focusing on the strongest points of my case. Richards write that CVH would probably be more careful about forensic competency admissions because of this legal action/

cc. page 66, I reviewed the events that led to this lawsuit and expressed anger and that I was hurt that I was not given a fair, full hearing at the time and was simply assumed to be 'mentally ill' and therefore neither credible nor competent.

dd. page 86, that I have been stable, interested in cooking and vocational rehab and there are still no needs for required medication.

Respectfully submitted,

*[signature]* 2/29/04
Elizabeth A. Marczeski
206 B Nautilus Dr. #104
New London, CT  06320
(860) 440-3541

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed by U.S. Mail, certified mail with return receipt #7003 1680 0006 5724 1040 on this 1st day of March, 2004, to the following.

Daniel Shapiro
AAG
55 Elm St., 5th Floor
Hartford, CT 06141-0120

*[signatures]* 2/29/04
2/27/04

Elizabeth Marczeski
206 B Nautilus Dr. #104
New London, CT 06320
(860) 440-3541