UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2004 MAR -1  P 2: 07

US DISTRICT COURT
BRIDGEPORT CT

ELIZABETH A. MARCZESKI,    :   CIVIL NO. 3:01CV01437 (AHN)(HBF)
   Plaintiff,    :

v.

SUSAN B. HANDY, ET.AT.,    :   FEBRUARY 29, 2004
   Defendants.

RESPONSE TO DEFENDANTS LOCAL RULE 56(A) STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE

1. In addressing the defendants statement, it has come to me that the defendants have become redundant and repetitive in there statements.

2. I will again respond to the defendants statement.

RESPONSE TO DEFENDANTS STATEMENT

1. On page 2, line 11, I agree that Knox and Fox had no responsibility of my care but lacked adequate training to exercise professional judgment.

2. Line 12, Knox did not speak to my Public Defender before the evaluation, as my Public Defender was in shock when it was announced that I would be found incompetent. After Knox's testimony, he spoke to my Public Defender and me regarding the Stipulation, and Knox could not remember his testimony.

3. Line 14, the evaluation by Knox, Fox, and Jahn took 15 minutes and I would know because it was quick, short,. abusive, and I wanted to leave after the badgering of me by Fox.

4. Line 17 is ludrious, and yes I asked actually for only 52 million for each day that I spent at CVH and the amount was amended. I was arrested as the former

Courtesy copy to! Honorable H.B. Fitzsimmons

1

defendants Law and Butler were about to loose their job for MCI for solicitation for personal gain. I was stalked on the internet by Law and Butler, she harassed my elderly parents who are 87 and 80, she intimidated me witnesses, and she phoned me everyday. I had a restraining order to not contact her that was modified.

5. Line 18. I never stated there was a conspiracy against the 'Team", the team just would not release and according to Bernaise and Deshpande, I was competent. Deshpande stated that her hands were tied (looking up) she meant Mullaney.

6. Line 18, the defendants continue to use the 21 year old medical record that is passe and by standards of the Dept of Mental Health that the record has not been up dated as required by law. As to the 60 days of incarceration, it was 2 weeks to 60 days and no longer than 60 days.

7. Line 20, the Defendants in deed did badger me to fail the test and when I met them, I certainly did not look competent in their eyes as they were upset and angry at the time;

8. Line 23, Fox violated my rights to a just and fair hearing of my competency. That was not afford to me do due Fox's anger which was most likely a result of his long visit at Corrigan prison.

9. Line 30, the competency test was 15 minutes and not 1 hour. And I was glad to get out of there, believe me. I could not tolerate one hour of Fox's badgering of me that was actually senseless.

10. Line 33. Knox states that CVH would allow me to have the implant surgery, which is to date is a lie (Knox never got that permission from CVH), and in his testimony, Knox believes that I am merely getting an injection in my knee until

Judge Handy informed him that the operation was serious in nature.

11. Line 46, Puglisi signed the documents to release me but I am still at CVH until Sept 16, 1999.

12. Line 48, Carles has been addressed in other documents and this is becoming repetitive. Carles saw me twice for testing and the the exaggerated amount of time she alleges. I did see her once at week at her Anger Management class. That was 5 minutes and 55 minutes was Wheel Of Fortune.

13. Line 51, Carles states that I was delusional level, that is crock, I was so medication, I could not think and I could not see the blots or pictures clearly.

14. Line 52, Deshpande did rely on the 21 year old document. If she had re-evaluated me, she would had come to Dr. Pinchay's diagnosis that I suffer from PTSD and that I require no medication.

15. Line 56, it was not proper to prescribe me Olanzaphine as it affected and impaired my thinking and vision. I have always taken an anti-depressant which would include only the anti-depressant part of Triavil. The VA gave me only the anti-depressant of the medication as prescribed.

16. Line 59, the medication did not control my anger. It sedated me to lalalalal land. My anger continually resurfaced for the cruel and unusual punishment that was being placed on me.

17. Line 62 is a lie. I suffer from PTSD.

18. Line 63 is untrue as the literature differs from the VA. The VA states Olanzaphine is for schizophrenia. CVH states Olanzaphine is for mood swings.

19. Line 67, Deshpande did release and in fact used to computer to assess my

21 year old record. She violated my privacy rights. She continued to phone Dr. Miller without my permission. Deshpande also phoned Mullaney regarding the surgery that he denied me permission, thus, violating a Stipulation.

20. Deshpande did force me to go to AA by O'Neil releasing information she also got of the computer for a DUI, and is Exhibit (J). I was told to go also my the nursing staff per orders of Deshpande.

21. As to document (J), that scheduling is false more or less. I did need attend half of what is on the schedule such a cooking class, computer training, yoga, recreation. The defendants just circled the items to make it look good. I attended AA, competency class, community meeting in morning and after dinner and the news group.

22. Line 73 is untrue. I could never get to see Deshpande as she was too busy like Franco and the rest of the team.

23. Line 77, this is inane and ludrious...Puglisi never met me 4 times during my incarceration. I met him on July 28, 1999 and on Sept 9, 1999 and that was it. Now that is really a very bald face lie of Puglisi. Puglisi can not even comprehend the dates he left CVH, when he went on vacation, when he returned, when he gave me the competency test, and lastly, he states that I was released on Sept. 17, 1999, but I was released on Sept 16, 1999.

24. Line 24, the defendants Puglisi and Deshpande continued to delay my release from CVH, one due to Puglisi was the only one that could release me which is inane and ludrious and unethical, and Deshpande states I am competent but her hands her tied by the man up stairs, thus, the defendants violated not only my right

4

to freedom, but conspired to retained me there for an indefinite time until the arrival of Puglisi. CVH could had certainly (which is normal practice) re-assign me to a different monitor, but I do not think the out come would had changed. I would still be at CVH until the 60 day limit. Deshpande's and Puglisi's conduct was deliberate and was inadequate to any standard of professional and adequate training in their care of me. Puglisi was not even present in his care of me but assigned someone else to cover for him who only 'reviewed' my medical notes.

25. Line 85, is a catchy statement. Puglisi was my monitor for my stay at CVH, but Puglisi was not present during my stay at CVH.

26. Line 88, that statement is false. Puglisi met with me on July 29th, 199. Puglisi has a problems with dates as shown in other documentation and comments.

27. Puglisi continues to mix his dates up again. This reminds me of someone not telling the truth. If I told the truth, I would certainly get my dates correct and believe me, I know the date I got released and it was not Sept 17, 1999. Line 92 is inane as Puglisi did not see me for a period of 5 weeks and not 4 and I only saw him twice. How could I see Puglisi on a 'regular basis' with him never there and as I state, I saw him twice, on the 28th of July, 1999 and Sept 9, 1999.

28. Line 95 is false, Puglisi never informed me of his going anywhere. The nursing staff informed me.

29. Line 98 is incorrect. My mind was impaired due to Olanzaphine.

30. Line 100, Puglisi gave me a competency test on that day but states he saw me on the 30th of July 1999. It was the 28th.

31. Line 106 is false. Puglisi asked me if a regular is ok and I agreed and saw him

write the order to the dietitian.

32. Line 107 is false. He did order my diet.

33. Line 115 is extremely false. Franco did not supervise any competency hearing. He did not have any time for me and monitored me via medical notes.

34. Line 117, Franco just reviewed the medical notes as I was becoming more warehoused.

35. Line 121 is false. I only met Franco twice and it was not August 27. Franco merely met my medical notes and not me.

36. Line 123, I asked Franco to give me a competency test as I wanted out of CVH and he shrugged. The conspiracy was by Law and Butler who manipulated the police and the New London's State Attorney's office so she would not loose her job. In fact, during my arrest, Law told the prosecutor that if I drop the civil action, she would drop the criminal charge against me. Law and Butler used everyone out of her vengeance for me and the publishing company I invested in did not exist.

37. Line 126, is false, Franco did tell me that I would be there for only 2 weeks on arrival of July 28, 1999.

38. Line 129 is false. CVH like any other prison receives federal funding for incarceration.

39. Line 130 is ludrious as no forensic ever saw me on a 'regular basis'. I was warehoused until Puglisi returned.

40 Line 131 is false and I did not see Carles but only twice other than the anger management classes.

41. Line 132 is profusely incorrect. I was warehoused during Puglisi's absence. It did affect my care, my health, my psyche, and my family.

42. Line 143, I sent my grievances according to the pamphlet given to me which is authored by Bill Brady and co-authored by Mullaney. Mullaney simply gave me grievances to Brady who checked my medical history and in his bias opinion felt my grievances were unfounded. Brady is not a patient advocate; Brady is for management. I have never seen so many people afraid of loosing their employment while at CVH. The became scared and would do anything or state anything to retain their jobs. (statement from Gary who is an employee of the restoration unit who witnessed the guard not allowing my biopsy.)

43. Line 153, Brady never did anything for me, as I had to write a grievance for him to see me again. As other patients, Brady even refused to return or answer his phone.

44. Line 154 is false. Mullaney allowed for me to be subjected to danger that he created by having a co-ed unit and failed to protect me from safety or harm from another individual that the State should protect me from while under involuntary incarceration.

45. Mullaney did not allow me to see a priest, have my surgery that was a Stipulation; and there is no dignity at CVH and humiliation.

46. Line 166, Brady found no merit as Brady never investigate the grievances. Brady instead went to my 21 year old medical record and dismissed the allegations due to the so called diagnosis of me as a 'paranoid'. Now that is a reasonable assessment when Deshpande failed to re-evaluate me.

47. Line 170 is false. I told Brady the witnesses, he just failed to act in my best interest as a patient advocate and favored management's 'safe' side of of retaining his employment. Brady after my release phoned me and ranted to me "why are you doing this?!!!"

48. Line 168 is false. If Brady had investigated, he would had found that my privacy was violated. He should had been around the nurses station who discuss patients illnesses such as HIV and liver disease and who has it.

49. Line 170 is false and is repetitive, I did name my witnesses for example I name Guerra, and I named a Francisco Rollin.

50. Line 171, Brady now contradicts himself and he states earlier in lines 168 and 170 that I named no witnesses, now on this line, Brady is interviewing witnesses. And again, Brady dismisses my grievances based on medical records.

51. Line 172, two men Shawn and Rosario did have oral sex.

52. Line 173, I did see sexual misconduct and did not get this through a 3rd party.

53. Line 174, I did not get my inhaler on 3rd shift and they told me to wait until the 1st shift.

54. Line 177, the dates are day times uses of my inhaler. Brady continues to support management rather than be an advocate.

55. Line 178, is false. I only got use of my inhaler during medications rounds which is morning, noon, and dinner. I was denied on 3rd shift.

56. Line 180, I did get shampoo, but the nurse would only give it to me once a week. and I never got any soap from CVH. I got my soap from my visitors and a won a bar of soap in a bingo game or some game.

57. Line 183, I got the shampoo once a week. Nurse Fran denied me several times.

58. Line 185 is false, the back board was on order as the warehouse was out of back boards. It longer than 5 days.

59. line 187 is grossly false. Brady should be ashamed of himself. Guerra not only assaulted me, but tried to put his finger in my vagina in the TV room and would try to grab my breasts or butt. Brady continues to seek my medical record to find a reason for his foundation to dismiss my allegations.

60. Line 190 is false. Plaintiff was not only harassed and spit on my HIV infected patients, but was sexually harassed during the time that Franco states he was monitoring me but was not.

61. Line 193=2 and 193 are grossly incorrect. CVH did nothing to ensure anything about my treatment other than take a anti-psychotic drug and be warehoused.

62. Line 194 is false. I rarely met with anyone including the dietitian. Everyone was on vacation or too busy to see me.

63. Line 195, yes I was transported to some medical appointments, but shackled.

64. Line 196 is false, the defendants were deliberate in their incarcerating me at CVH with a monitor on vacation, and no medical staff to see as they were too busy. The defendants did not exercise good professional judgment in their care and treatment of me and lacked in adequate training and were grossly negligent.

65. Line 199 is false. The nutritionist went on vacation and I just had nothing to

eat but cookie and mild or a tuna sandwich with mayo and no tuna. In had an apple and orange for lunch while other had yummy hamburgers and hot dogs and roast beef. When I did have a meal, the onions were all over the plate.

66. Line 122, Brady is correct. All Brady did was review my medical record and did not investigations into my grievances. Brady is wrong unless he fabricated more grievances than I could write. I did not have 100 grievances. There were 19 less one which was taken away from me but witnessed by Dr. Carles regarding the assault by Guerra whom I wanted arrested.

67. Line 210 is false. I did see McKeon and she gave me her business card. I was referred to her my the medical staff.

68. Line 218 is false. See Exhibit (D) and Exhibit (A). I did see Pinchay on three occasions at the Dept of Mental Health and Addiction Services.

68. Line 220 is also false. I did see Pinchay and have documentation to support my claim.

I reading over the mountainous amount of repetitive accusations by the defendants, I just did not deserve what they did to me. The defendants were less than professional in their professional judgment of my treatment and care and were grossly negligent in giving me medication that impaired my thinking and judgment in which the defendants themselves lack adequate training in their treatment of me while incarcerated at CVH. It appears when I arrived, everyone flew the coop, or went on vacation.

Respectfully submitted,.

10

*Elizabeth M*  2/29/04

Elizabeth Marczeski
206 B Nautilus Dr. #104
New London, CT  06320
(860) 440-3541

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed by U.S. Mail, certified mail with return receipt #7003 1680 0006 5724 1040 on this 1st day of March, 2004, to the following.

Daniel Shapiro
AAG
55 Elm St., 5th Floor
Hartford, CT  06141-0120

*Elizabeth Z.*  2/29/04

Elizabeth Marczeski
206 B Nautilus Dr. #104
New London, CT  06320
(860) 440-3541