UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH A. MARCZESKI,   : CIVIL NO. 3:01CV01437 (AHN)(HBF)

v.

SUSAN B. HANDY, ET AL,   : AUGUST 8, 2004

RESPONSE TO COURT'S ORDER OF NOTICE DTD JULY 30, 2004

1. I feel that I did respond to the defendants 56(a)2 Statement of Material Facts Not in Dispute when I submitted by opposing summary judgment against the defendants.

2. I will comply with the order and do to the best of my ability.

   In accordance to Local Rule 56(a)1, plaintiffs' reply to defendants statement of material facts not in dispute:

1. Admit. I do not deny that I was arrested for harassment 2, but that was a false arrest. I have never harassed anyone.

2. Deny. I was sent to Norwich to meet with Court evaluators to see if I was competent to stand trial. (Fox, Knox, Jahn) I do not dispute the fact of meeting with Court evaluators.

3. Admit. A competency test was done on July 14, 1999 of which I do not dispute.

4. Admit. I do not dispute that the examination was done pursuant to CT General Statues. I do dispute that the defendants Knox and Fox badgered me to fail.

5. Admit. I do not dispute Fox's residency at Yale-New Haven Hospital in 1998.

Courtesy copy to: Honroable H. B. Fitzsimmons

1

6. Admit. I do not dispute Fox's Fellowship in Forensic Psychiatry at Yale in 1999.

7. Admit. I do not dispute that Fox works 25 hours as an consultant for CVH.

8. Deny. I did agree with Fox stating that at CVH he oversees the care and treatment of insanity acquitees, conducting Court ordered evaluations, and conducting risk assessments for CT mental health care providers. Fox merely badgered me to send me to CVH and relayed this to my public defender R. Watkins.

9. Deny. I do not agree with Fox doing more than 500 evaluations since 1997, and that Court ordered evaluations are 45 minutes. My evaluation was 15 minutes.

10. Admit. I agree that I have never met Fox or Knox before the evaluation.

11. I dispute Fox and Knox's statement that they had nothing to do with my care or treatment. Knox testified that he guaranteed that with the stipulation of my going to CVH, I would get my implant surgery and other medical appointments.

12. Deny. My public defender did not speak to Fox before or after the evaluation. She (Watkins) was miffed that she found out I was going to CVH during Knox's perjured testimony.

13. Deny. I was never told by the "team" Fox, Knox that I was being examined to see if I was competent to stand trial, that a report of that examination would be given to the Court, and that anything I stated would not be confidential. That is a bald face lie.

14. Deny. I dispute the hour examination. The examination took 15 minutes.

15. Deny. I dispute that the defendants stating that they found me incompetent at the end of the examination that took 15 minutes. The defendants were so prejudicial that they also stated they smelt alcohol on my breath and that is yet another lie.

16. Deny. Statement by the Team (Fox, Knox) that my thought process was disorganized and characterized primarily by tangentially. I disagree. I answered the questions and repeated the number backwards even with their badgering of me to fail the examination.

17. Deny. Statement 17 is ludrious. I was falsely arrested and I have my 1st amendments right to address the Court with my grievances.

18. Deny. I disagree, the Team did lie on the report and it was Knox who used the work paranoid. I was in all truth, Knox wrote the entire report with signatures of Jahn, Fox. and Knox.

19. Deny. I disagree. Knox under testimony, stated that I could be restored to competency in 60 days. But Judge Handy put it in the form of 2 weeks to 60 days. The prosecutor wanted me to be there for the duration which was 18 months. The Team again used a 21 year old document of my mental health that was created by Dr. Coric and is false. The Team is required by CT State Statues that the Team use the most current mental health evaluation. The Team did not use any recent medical report.

20. Deny. I disagree and deny the defendants statement that they did not badger me. They did and the Team did not render me competent upon meeting with them.

21. Deny. Fox is lying. He indeed phone my public defender Watkins and confessed to badgering me. Watkins phoned me a CVH to relay the matter to me.

22. Deny. I disagree with the defendants statement of professional ability.

23. Deny. Fox did injury me by badgering me and sending me to CVH where I was subjected to cruel and unusual punishment.

3

24. Admit. I do not disagree with Knox having a license to be a social worker but he has several degrees in social work that I find odd as to who would want multiple degrees in social work when only one is required.

25. Deny. I disagree. Knox's license has been reported to the State Board of Licensing for fraud.

26. Admit. I do not disagree with Knox's working at Dept. Mental Health and Addiction. (SMHA).

27. Admit. I do not disagree with Knox working for the Norwich Office of Court evaluation.

28. Deny. I disagree. Knox (whom I consider paranoid) sat behind a binder and was afraid to look at me. He conduct in evaluating is questionable.

29. Admit. I do not dispute that Knox evaluated 500 people for competency.

30. Deny. The evaluation which I dispute was 15 minutes, not 45 or 90 minutes.

31 -32. Deny. I dispute as Knox had no professional ability in that he lacked adequate training in making evaluations such as hinding behind a book and he exercised poor judgment by perjuring himself to Judge Handy.

33. Deny. Knox did commit perjury. Knox testified that CVH would allow the stipulation of me having a implant; Knox felt I was merely getting a injection in my knee.

34. Deny. I dispute Knox's statement as he did inflect injury upon me by perjuring himself to Judge Handy and hiding behind a book and not being able to face me.

35. Admit. I do not dispute line 35.

36 - 44. Admit. I do not dispute lines 36 through 44.

45 - 49. Admit. I do not dispute lines 45 through 49.

50. I deny line 50. Dr. Carles did not see me only all the dates mentioned. I saw her twice for testing and once a week for anger management that took 5 minutes.

51. I deny line 51 and the word delusional level. One sees what they see with ink blots..mostly bats. I was under olanzaphine which impaired my thinking.

52. I deny Deshpande as to her professional ability. She used the 21 year old mental health record to evaluate me falsely. Deshpande exercised poor judgment in making her decisions in the care and treatment of me.

53. Admit. I do not dispute line 53.

54. I deny line 54 as Deshpande exercised poor judgment in making decisions in my care and treatment and lacked adequate training.

55. I deny line 55. It was NOT proper to give me olanzaphine which could had killed me by being borderline diabetic.

56. I totally deny line 56. The medical history is 21 years old and is a fraud created by Dr. Coric.

57. Deny. I was forced to take olanzaphine or I would not be released from CVH.

58. Deny. The medicine impaired by thinking and made me plea to a crime I did not commit.

59. Deny. The medication impaired my thinking including taking tests by Carles.

60. Deny. I never met Dr. Callinan and merely look at the 21 year old false medical record and made his decision based on that record.

61. Deny. "anti-psychotics" impaired my thinking and judgment.

62. Deny. I was and am not paranoid with no delusions. I suffer from PTSD (post traumatic stress disorder).

63. Deny. The literature stated Olanzaphine is for mood swings whereas the VA Medical Center states Olanzaphine is for schizophrenia.

64. Deny. The medication was not acceptable and Despande used the 21 year old medical record.

65. Deny. Coric gave me a anti-depressant.

66. Admit.

67. Deny. Deshpande did release medical information without my permission.

68. Deny. Puglisi generated the Competency test to release me.

69. Deny. I was forced to attend AA meetings and Deshpande did state that I was competent to stand trial but that her hands were tied by Mullaney.

70. Deny. AA meetings were not suggested but forced and Kathy O'Neil released information without my consent that forced me to go to AA. She apologized but she told everyone I had a DUI which made the Team send me to AA. The DUI was over 14 years ago.

71. Admit.

72. Deny. Deshpnade never saw me as other patients as she continued to state that I was competent.

73. Deny. Deshpande only saw me twice professionally.

74. Deny. Deshpande wrote what she wanted to write using the 21 year old medical record.

75. Admit.

76. Admit.

77. Deny. I met Puglisi twice. Once on July 29, 1999 and Sept ?, 1999 (taking

competency with nurse trainee present.

78. Deny. I was released on Sept 16, 1999 not Sept 17, 1999.

79. Admit.

80. Deny. Deshpande rarely saw me and Puglisi who was my forensic monitor took a lengthy vacation, thus, I was warehoused.

81. Admit.

82. Admit.

83. Admit.

84. Admit.

85. Deny. Puglisi was assigned to me but I never saw him but twice, thus, he was not present to monitor me.

86. Admit.

87. Deny. Puglisi never saw me four times and he sure did not see me for 3 hours.

88. Deny. Puglisi met with me on 29th July 1999 and not 30th July 1999.

89. Deny. How can Puglisi make progress notes when he was on vacation.

90. Deny. I did not met Puglisi on August 6, 1999 or at any team meeting.

91. Deny. My presentation was that I was innocent but no one would believe me.

92. Deny. Puglisi was on vacation 5 weeks not 4 weeks.

93. Admit.

94. Admit.

95. Deny. Puglisi never told me he was going on a vacation. I was left in the dark and would had asked for a replacement which is standard.

96. Admit.

7

97. Admit.

98. Deny. My thinking was impaired due to Olanzaphine.

99. Deny. My thinking was impaired due to Olanzaphine.

100. Deny. As in quesiton, Puglisi states in saw me on 30th July 1999, now on line 100, Puglisi states I failed a competency test he performed on 29th July 1999. Puglisi contradicts himself from line 88 and 100.

101. Deny. I did not see Puglisi on 30th July 1999.

102. Admit.

103. Deny. I passed the competency test but everything is "suspect".

104. Deny. Only Puglisi could release without any of the Team.

105. Deny. Puglisi put me on regular meals.

106. Admit.

107. Deny. On July 29th, 1999, Puglisi put me on a regular meal.

108. Deny. Puglisi use poor judgment in making in decisions of my care and treatment and had inadequate training in exercising those decisions.

109. Deny. Puglisi was on vacation and violated my right to freedom. I could not be released until he returned.

110. Admit.

111. Admit.

112. Admit.

113. Admit.

114. Admit.

115. Deny. Franco did not even see me to supervise any monitoring of me.

116. Admit.

117. Deny. Franco did not monitor me while Puglisi was on vacation.

118. Deny. Franco did not cover for Puglisi. In fact, Franco denied me when I asked him to give me a competency test.

119. Deny. Franco now states he merely "reviewed" my progress by making notations in my medical record. Franco did not see me as required by law.

120. Deny. I met with the medical team twice and was told I was competent and that I did not need to see the team anymore. I was warehoused.

121. Deny. I never met Franco except on July 29th when he told me I would be at CVH for two weeks. I saw him near my release in forcing him to give me a competency test with Puglisi gone.

122. Deny. Franco would not give me the complete test due to Puglisi's absence.

123. Deny. Law and Butler did manipulate the Police, the State's Attorney's Office and the Judge. I sued Law and Butler and they had to pay me for harassment (stalking), fraud, and emotional duress.

124. Deny. I was released on Sept 16, 1999 not Sept 17, 1999.

125. Admit.

126. Deny. Franco did tell me I was competent and that I was only there is see AND/OR what may be incompetent about me.

127. Deny. Franco is merely lying. He did state two weeks and I would be released.

128. Admit.

129. Deny. CVH is paid Federal money for my incarceration.

130. Deny. I never saw one monitor other than Franco and that was twice.

131. Admit. no sure

132. Deny. Puglisi's absence did affect me. It prolonged my stay at CVH.

133. Deny. Franco exercised poor judgment in assessing and making decisions in my care and treatment and lacked adequate training in making those decisions.

134. Deny. Franco did nothing in his treatment and care of me.

135. Admit.

136. Admit.

137. Admit.

138. Admit.

139. Admit.

140. Admit.

141. Admit.

142. Admit.

143. Deny. If Mullaney read my grievances, then he was aware.

144. Admit.

145. Admit.

146. Admit.

147. Deny. Mullaney meets with the staff each day to get a progress report.

148. Admit.

149. Admit.

150. Admit.

151. Admit.

152. Admit.

153. Deny. Brady never investigated any of my grievances and in fact, he phoned me upon my release to continue to investigate my grievances. Brady is for management and not an advocate for patients rights.

154. Deny. I was subjected to cruel and unusual punishment a constitutional amendment.

155. Admit. Brady is not a defendant and this should be stricken

156. Admit.

157. Admit.

158. Admit.

159. Admit.

160. Deny. I was released on 16th Sept 1999 not 17th Sept 1999.

161. Admit.

162. Deny. That is a bald face lie. I did not consider suing until Sept 1999. I was working on suing Law and Butler at the time of my incarceration.

163. Admit.

164. Admit.

165. Deny. Brady did no investigations, especially regarding patients having sex.

166. Deny. Brady was worried about abuse of a Guard who mistreated me.

167. Deny. I gave Brady all pertinent information regarding my grievance.

168. Admit.

169. Deny. I told Brady that O'Neil and Despande violated my rights by releasing information without my permission.

170. Deny. I told Brady who all the witnesses were. Guerra, Rolan, Rosario etc.

171. Deny. Brady did not investigate but merely looked into my medical record and did not act since Deshpande had me as a paranoid and psychotic schizophrenic.

172. Deny. Alice Smith was aware of patients having sex with each other. Rosario and Shane.

173. Deny. I witnessed the sexual behavior.

174. I did not have accesses to my asthma medicine. It was controlled.

175. Admit.

176. Admit.

177. Deny. Those medication times are day time. I was denied my inhaler during the morning hours such a 3am or 4am.

178. Deny. I requested my inhaler but was denied by 3rd shift workers who slept or were playing monopoly.

179. Deny. I was forced to bathe in industrial soap.

180. Deny. I was denied any shampoo or soap. I never got it.

181. Deny. The industrial soap made my skin and scalp bleed. This can be verified by medical notes by nurse Fran.

182. Deny. I never saw any baby shampoo at CVH.

183. Deny. I was prescribed a medicated shampoo but was denied using it.

184. Deny. I was denied a back board for a long time.

185. Deny. The board was ordered but I did not get the board in 5 days.

186. Deny. It took 3 weeks to get a back board as the warehouse was out.

187. Deny. I WAS sexually groped and harassed by a Anuzio Guerra on several occasions.

188. Deny. I reported this to Alice Smith and Mullaney but Brady did nothing about the assault, groping, and sexual harassment of me.

189. Deny. I did report this to a professional on staff. Alice Smith who sees Mullaney daily.

190. Deny. I was sexually harassed beyond the limit.

191. Deny. I was denied my implant surgery and medical appointments that was a stipulation of me going to CVH.

192. Deny. CVH did nothing to help in my medical needs and impaired my thinking by giving me Olanzaphine to prevent any restoration.

193. Deny. No one at CVH responded to my medical needs.

194. Admit.

195. Deny. I was transported to medical appointments but it was not dignified. I was cuffed and shackled.

196. Deny. The defendants violated my constitutional rights by subjecting me to cruel and unusual punishment.

197. Deny. The dietitian was on vacation, thus, I was starved and had bread and a salad while others ate roast beef etc.

198. Deny. The conditions of my food got worse where I had an apple and an orange for lunch while others had hamburgers or steak.

199. Deny. The dietitian was on vacation. I was still starved.

200. Deny. The nutritionist was on vacation.

201. Deny. Brady simply would look at my medical record and would not investigate my grievances which is criminal by law.

202. Deny. Brady continued to look at my medical record than investigate my grievances. I was not a paranoid psychotic schizophrenic.

203. DENY. I never wrote over 100 grievances. That is a bald face lie.

204. Deny. The staff would hand out grievances rather than deal with the issue.

205. Deny. I meet with medical Team twice.

206. Deny. I never told Brady two days after my arrival that I would sue CVH.

207. Admit.

208. Admit.

209. Admit.

210. Deny. I did contact McKeon and she gave me her business card.

211. Deny. Management must of told McKeon of my civil action.

212. Admit. I only met McKeon to see how I could get released from CVH.

213. Admit.

214. Admit

215. Admit.

216. Admit.

217. Admit

218. Admit. Pinchay reviewed me at SMAH

219. Admit.

220. Admit.

221. Admit.

222. Admit. But Pinchay did give me a clean bill of health.

I attest that the foregoing is truthful and correct. *[signature] Elizabeth A. Z. 8/11/04*

Respectfully submitted,

*[signature] Elizabeth A. Z. 8/10/04*
Elizabeth A. Marczeski
206 B Nautilus Dr. #104
New London, CT 06320
(860) 440-3541

Notary *[signature] Rhonda L. Exum*

Rhonda L. Exum
Notary Public, State of Connecticut
Commission Expires on February 28, 2008

## CERTIFICATION

This is to certify that the following copy has been sent U.S. first class mail on this 10th day of August 2004 to the following:

Daniel Shapiro, AAG
55 Elm St.
P.O. Box 120
Hartford, CT  06141-0120

Elizabeth A. Marczeski    8/10/04
206 B Nautilus Dr. #104
New London, CT  06320
(860) 440-3541