UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
ELIZABETH A. MARCZESKI          :
                                :
v.                              :   Civ. No. 3:01CV01437 (AHN)(HBF)
                                :
SUSAN B. HANDY,                 :
SARA STEERE,                    :
PATRICK K. FOX, M.D.,           :
BRUCE KNOX,                     :
PRAMODINI DESPHANDE, M.D.,      :
MARK PUGLISI,                   :
VINCENT FRANCO and              :
GARRELL MULLANEY                :
                                :
```

<u>RECOMMENDED RULING ON MOTIONS FOR SUMMARY JUDGMENT</u>

Plaintiff brings this civil rights action pursuant to 42 U.S.C. §1983, 18 U.S.C. §241, and 18 U.S.C. §242 against five employees of the Connecticut Valley Hospital ("CVH"), and one employee of the Norwich Office of Court Evaluation.[1]  This action arises out of a state criminal action in which plaintiff was charged with second degree harassment, adjudged incompetent and committed to CVH to be restored to competency.  Plaintiff alleges that defendants violated her constitutional rights during her mental competency evaluation and while she was a pretrial detainee at CVH.

For the reasons that follow, plaintiff's Motion for Summary Judgment **[Doc. #65]** is **DENIED**, and defendants' Motion for Summary Judgment **[Doc. # 72]** is **GRANTED**.

---

[1] Defendants are sued solely in their individual capacities for compensatory damages, punitive damages, attorney fees and costs.

STANDARD OF LAW

Summary judgment is appropriate when there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257-58 (1986).  Therefore, to defeat summary judgment, evidence must be presented upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not create a genuine issue of material fact by merely presenting unsupported statements.  See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Conclusory allegations or unsubstantiated speculation on the part of the non-movant is insufficient to defeat summary judgment.  D'Amico, 132 F.3d at 149.  Therefore, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts or defeat the motion through mere speculation or

2

conjecture." Western World Insurance Co. v. Stack Oil, Inc. 922
F.2d 118, 121 (2d Cir. 1990)(citing Knight v. U.S. Fire Insurance
Co., 804 F.2d 9, 11 (2d Cir. 1986)); see also Fed. R. Civ. P.
56(e); Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d
Cir. 1993) (holding that a party may not rely on conclusory
statements or an argument that the affidavits in support of the
motion for summary judgment are not credible).  Instead, to
defeat summary judgment the non-moving party must produce
specific, particularized facts indicating that a genuine factual
issue exists.  See Wright v. Coughlin, 132 F.3d 133, 137 (2d.
Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986)).

A verified complaint may serve as an affidavit for summary
judgment purposes.  See Colon v. Coughlin, 58 F.3d 865, 872 (2d
Cir. 1995).  However, "mere verification does not transform
rhetoric, conclusions, and other non-admissible statements into
admissible evidence."  Johnson v. Doe, 00 Civ. 3920, 2001 U.S.
Dist. LEXIS 3651, at *3 (S.D.N.Y. Mar. 30, 2001).

Where one party is proceeding pro se, the court reads the
pro se party's papers liberally and interprets them to raise the
strongest arguments suggested therein.  See Burgos v. Hopkins, 14
F.3d 787, 790 (2d Cir. 1994).  Despite this liberal
interpretation, however, a "bald assertion" unsupported by

evidence cannot overcome a properly supported motion for summary
judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).


FACTS

Based on defendants' D. Conn. L. Civ. R. 56(a)(1) Statement
and exhibits and plaintiff's D. Conn. L. Civ. R. 56(a)(2)
Statement and exhibits, the following facts are undisputed.


Parties Involved in the Litigation

1.  Plaintiff Elizabeth Marczeski was charged with Second
    Degree Harassment based upon a series of events which
    occurred between September of 1997 and March of 1998.
    [Doc. #74 at ¶1].  Plaintiff underwent a court ordered
    mental competency evaluation and, as a result, was
    subsequently sent to CVH.  Id. at ¶¶2, 19, 34, 36.

2.  Defendant Dr. Patrick Fox is a licensed physician who
    completed his residency at Yale-New Haven Hospital in
    1998.  Id. at ¶5.  Dr. Fox completed a Fellowship in
    Forensic Psychiatry at Yale in 1999.  Id. at ¶6.  In
    addition to being a professor at Yale, Dr. Fox works
    approximately twenty-five hours per week at CVH as a
    forensic consultant. Id. at ¶7.

3.  Dr. Fox's duties a forensic consultant include overseeing
    the care and treatment of insanity acquitees, conducting

court ordered evaluations, and conducting risk assessments for Connecticut mental health providers.  <u>Id.</u> at ¶8.

4. Dr. Fox has conducted more than five hundred court ordered evaluations since July, 1997.  Court ordered evaluations are usually approximately forty-five minutes to ninety minutes in length.  <u>Id.</u> at ¶9.

5. Since approximately 1989, defendant Bruce Knox has been licensed by the Connecticut Department of Public Health to practice as a licensed clinical social worker in Connecticut.  <u>Id.</u> at ¶24.  Mr. Knox's license has never been disciplined in any manner.  <u>Id.</u> at ¶25.

6. In 1999, Mr. Knox was employed by the Department of Mental Health and Addiction Services as a social worker.  <u>Id.</u> at ¶26.  As part of his employment, Mr. Knox worked for the Norwich Office of Court Evaluation.  <u>Id.</u> at ¶27.  At the time of the evaluation of plaintiff, Mr. Knox had conducted more than five hundred court ordered evaluations.

7. Defendant Pramodini Deshpande, M.D., is a psychiatrist, who has been licensed to practice as a physician in Connecticut since approximately 1981.  <u>Id.</u> at ¶37.  Dr. Deshpande's license has never been disciplined.  <u>Id.</u> at ¶38.

8.  Dr. Deshpande was employed as a psychiatrist at CVH between 1996 and November of 2003.  During that period, Dr. Deshpande's duties included admitting patients, providing treatment and prescribing medication, conducting psychiatric evaluations and assessments, evaluating privilege issues, treatment planning, assessing risk behaviors and discharge planning.  Id. at ¶40.

9.  During plaintiff's stay at CVH, Dr. Deshpande was her principal clinician as well as part of plaintiff's treatment team.  Id. at ¶41.

10. Since 1986, defendant Mark S. Puglisi has been licensed by the Connecticut Department of Public Health to practice as a licensed clinical social worker in Connecticut.  Id. at ¶81.  Mr. Puglisi's license to practice as a clinical social worker has never been disciplined in any manner.  Id. at ¶82.

11. Mr. Puglisi has been employed as a Competency Forensic Monitor at CVH since November 1, 1996.  Id. at ¶83.  Mr. Puglisi's role as a Competency Forensic Monitor at CVH is to assist in the evaluation of persons sent to CVH pursuant to Conn. Gen. Stat. §54-56d.  Id. at ¶84.  Mr. Puglisi was the Competency Forensic Monitor for plaintiff during her stay at CVH.  Id. at ¶85.  Mr. Puglisi does not

make decisions about a patient's competency without entire treatment team involvement.  Id. at ¶104.

12. Defendant Vincent Franco, Ph.D, is a psychologist who has been licensed in Connecticut since 1975.  Id. at ¶110. Dr. Franco has been board certified in Clinical Psychology since 1990, and his license has never been subject to any discipline.  He is the most senior psychologist within the state system.  Id. at ¶111.  While plaintiff was at CVH, Dr. Franco was employed as a Supervising Clinical Psychologist and Supervising Forensic Monitor.  Id. at ¶112.  Dr. Franco's duties included supervising competency to stand trial evaluations by the Competency Restoration In-Patient Program.  Id. at ¶113.  Dr. Franco's role as a Supervising Forensic Monitor at CVH was to oversee and participate in evaluating persons sent to CVH pursuant to Conn. Gen. Stat. §54-56d.  Id. at ¶114.  Dr. Franco was not in charge of assigning social workers to cases, and he did not assign Mr. Puglisi plaintiff's case.  Id. at ¶128.

13. Defendant Garrell Mullaney has been the Chief Executive Officer ("CEO") for CVH since July of 1995.  Id. at ¶¶135, 137.  As CEO of CVH, Mr. Mullaney is responsible for the 540 bed hospital.  He is the head of planning, programming, budget oversight, human resources and allocations, and he is responsible for maintaining the

Joint Commission on Accreditation of Health Care
Organizations standards at CVH as well as maintaining the
standards of the Center for Medicare and Medicaid
Services. Id. at ¶141. Mr. Mullaney is not involved in
any way in the evaluation process or any patient treatment
that a person in the Restoration Unit receives. Id. at
¶146. Mr. Mullaney was not involved in assigning health
care professionals to care for plaintiff at CVH. Id. at
¶151.

14. Mr. Mullaney has no recollection of ever meeting or
speaking to plaintiff, although he did read the complaints
that plaintiff sent to him. Id. at ¶¶141-142. After Mr.
Mullaney had read these materials, pursuant to hospital
policy, he referred them to Will Brady. Id. at ¶148.
Some time later, Mr. Mullaney received a report from Mr.
Brady which indicated that Mr. Brady investigated
plaintiff's numerous allegations and grievances. Id. at
¶152.

15. Mr. Brady is a Human Rights Officer at CVH. As such, it
is his responsibility to investigate allegations of
misconduct toward patients or issues raised in patient
grievances. Id. at ¶149. Mr. Brady's duties include
meeting with patients to discuss issues and grievances,
meeting with treatment professionals regarding patient

issues or concerns, conducting investigations of complaints made by patients and acting as a liaison between patients and the treatment professionals. Id. at ¶156. Mr. Brady also mediates disputes between patients and health care professionals at CVH. Id. at ¶157.

16. Mr. Brady was assigned to investigate the grievances and complaints that plaintiff filed. Id. at ¶¶163-64. In conducting his investigation, Mr. Brady interviewed witnesses, reviewed plaintiff's medical record, met with plaintiff on numerous occasions, and met with plaintiff's treatment team and other health care professionals in the Restoration Unit. Defs.' Ex. J.

17. Mr. Brady found no merit to plaintiff's claims and allegations. Id.

18. Mr. Brady does not have education, training or experience in the professional standards applicable to the fields of psychiatry, psychology, clinical social work, forensic monitoring or nursing. [Doc. #74 at ¶158].

19. Kim McKeon is a licensed clinical social worker. Id. at ¶207. Although plaintiff has identified Ms. McKeon as an expert witness in this case, Ms. McKeon is unaware of the nature of plaintiff's lawsuit.[2] Id. at ¶¶210-211.

_____

[2] The Court notes that plaintiff contends that she has contacted Ms. McKeon and plaintiff has provided a photocopy of Ms. McKeon's business card as proof. However, defendants have submitted an affidavit signed by Ms. McKeon indicating that she has no

20. Dr. Aristeo Pichay is a psychiatrist who has been licensed to practice medicine in Connecticut since 1977.  Id. at ¶214.  Although plaintiff has identified Dr. Pichay as an expert witness in this case, Dr. Pichay has never been contacted by plaintiff regarding her lawsuit.  Id. at ¶217.  He is unaware of the nature of plaintiff's lawsuit.[3] Id. at ¶222.

Plaintiff's Competency Evaluation

21. Prior to the evaluation process in 1999, Dr. Deshpande, Dr. Fox, and Bruce Knox had never met nor heard of plaintiff.  Id. at ¶¶10, 41.

22. On July 14, 1999, a competency to stand trial evaluation of plaintiff was conducted by Patrick K. Fox, M.D.; Marianne F. Jahn, Ph.D.; and Bruce Knox, LCSW.  [Doc. #74 at ¶3].  The examination was conducted pursuant to and in accordance with §54-56d of the Connecticut General Statutes.  Id. at ¶4.  This examination was ordered by Connecticut Superior Judge Susan B. Handy.  Id. at ¶2.

knowledge of this lawsuit.  Because plaintiff has presented no evidence that Ms. McKeon has actually agreed to testify on behalf of plaintiff, the Court accepts defendants' assertion that Ms. McKeon is not a witness for plaintiff.

[3] The Court notes that, where plaintiff avers that Dr. Pichay is an expert who will testify on her behalf, she has not presented any evidence to support this claim.

23. Prior to the examination, Dr. Fox, Dr. Jahn and Bruce Knox ("Examination Team") reviewed an arrest warrant describing the allegations leading to plaintiff's arrest. Id. at ¶12. Also prior to the examination, plaintiff was advised that: 1) she was being examined pursuant to a court order regarding her competence to stand trial; 2) a report would be prepared for the court; and 3) statements that she made would not be confidential. Plaintiff indicated that she understood this. Id. at ¶13.

24. Dr. Fox, Dr. Jahn, and Bruce Knox concluded that, as of the date of the examination, plaintiff could not assist in her defense. Id. at ¶19. At the time of the examination, the Examination Team concluded that plaintiff's "thought processes were disorganized and characterized primarily by tangentiality." Id. at ¶16. It was the opinion of the Examination Team that plaintiff "could most likely be restored to competency through an inpatient psychiatric hospitalization of approximately 60 days" and that "inpatient hospitalization would be the least restrictive setting necessary to restore her to competence." Id. at ¶19. The Examination Team members all agreed that plaintiff was not competent to stand trial as of the date of the evaluation, and this opinion was expressed to Judge Handy during the competency hearing. Id. at ¶34.

25. On or about July 28, 1999, pursuant to Conn. Gen. Stat. §54-56d,[4] plaintiff was sent to CVH pursuant to an Order by Judge Handy.  Id. at ¶36.

26. When patients are sent to CVH pursuant to Conn. Gen. Stat. §54-56d, they are placed in the Restoration Unit.  Id. at ¶145.  Mr. Mullaney is not involved in the daily management of patients in the Restoration Unit.  These functions are performed by the Restoration Unit's professional staff.  Defs.' Ex. I.

27. Since July 14, 1999, neither Dr. Fox nor Bruce Knox have had any responsibility whatsoever for plaintiff's care or treatment. [Doc. #74 at ¶11].  In fact, besides testifying in the state court hearing regarding plaintiff's competency on approximately July 27, 1999, Mr. Knox has had no professional or personal interaction with plaintiff since the July 14, 1999 evaluation.  Id. at ¶31.

---

[4]Conn. Gen. Stat. §54-56d states, in relevant part: "If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which he is charged, the court shall order an examination of the defendant as to his competency . . . If the examiners determine that the defendant is not competent, they shall then determine whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section."  Conn. Gen. Stat. §54-56d (2001).

Plaintiff's Stay at CVH

28. Plaintiff's asthmatic condition was noted upon her arrival at CVH.  Id. at ¶175.  Plaintiff's inhaler was prescribed to her on the date of her arrival. Id. at ¶176. Plaintiff's medical record indicates that she used her inhaler at least seventeen times during her stay at CVH. Id. at ¶177; Defs.' Ex. A at 61, 81, 83, 88, 93, 99 111, 112, 115, 122, 124, 127, 128, 129, 132, 134.

29. Plaintiff was provided a backboard seven days after her arrival at CVH.  [Doc. #74 at ¶185].

30. Plaintiff's medical record indicates that she met with a nutritionist four times within the first ten days of her stay at CVH.  Id. at ¶199.  Plaintiff then met with the nutritionist at least two other times during her stay. Id. at ¶200.

31. While at CVH, plaintiff was transported to medical appointments as needed, unless she refused to attend (as she did on one occasion).  Id. at ¶195.

32. CVH makes available to its patients the following brands of soap and shampoo: DermaPro Spa Body and Hair Shampoo, DermaPro Ultra-Mild Antimicrobial Lotion Soap, and baby shampoo.  Id. at ¶¶180, 182.  Plaintiff used the DermaPro Spa Body and Hair Shampoo during her stay at CVH.  [Doc. #82 at ¶56].

33. Upon plaintiff's admission to CVH, Mr. Puglisi, Dr.
    Franco, and Dr. Deshpande all reviewed the July 19, 1999
    report to the Court, in which the Evaluation Team
    determined that plaintiff was unable to assist in her
    defense and did not understand the proceedings against
    her. [Doc. #74 at ¶¶44, 86, 116].

34. On either July 29 or July 30, 1999,[5] Mr. Puglisi met with
    plaintiff and conducted a baseline competency examination.
    Id. at ¶88; Doc. #82 at ¶26.  A baseline competency
    evaluation is a preliminary meeting to determine the
    patient's strengths and weaknesses as they relate to her
    ability to assist in her defense and understand the claims
    against her. [Doc. #74 at ¶102].  Mr. Puglisi noted that
    plaintiff's "reasoning process is suspect."  Id. at ¶89.
    Plaintiff did not pass the competency test on July 29,
    1999.  Id. at ¶100.

35. On July 30, 1999, Mr. Brady met with plaintiff.  Id. at
    ¶166.

36. Mr. Puglisi met with plaintiff again on August 6, 1999.
    Defs.' Ex. A at 94.   However, from August 8, 1999 until
    September 6, 1999, Mr. Puglisi was out of the country.
    [Doc. #74 at ¶92].  While he was away, Vincent Franco,

---

[5] The Court notes that a dispute exists as to whether this
meeting took place on July 29 or July 30.  However, this factual
dispute is not material to the disposition of this case.

Ph.D., a clinical and forensic psychologist, was in charge of monitoring plaintiff. While plaintiff was a patient at CVH, Dr. Franco was also the Supervising Forensic Monitor. Id. at ¶94. While Mr. Puglisi was on vacation, Dr. Franco reviewed the progress of plaintiff regularly. Id. at ¶119. Dr. Franco met with plaintiff's treatment team on a weekly basis to discuss plaintiff's progress, and he reviewed the report of Dr. Elena Carles dated August 23, 1999. Id. at ¶120.

37. On September 2, 1999, Dr. Franco met plaintiff. Id. at ¶122. He noted that plaintiff's "general circumstantiality and over personalization of procedures raise questions related to overall reality testing and ability to triage and assist in her defense." Id. at ¶123.

38. During the week of August 6, 1999, a meeting was held. Id. at ¶90. At this time Dr. Deshpande considered prescribing a medication to assist in the restoration to competency process.

39. During plaintiff's treatment, Dr. Deshpande recommended psychological testing for her in order to obtain a differential diagnosis and to test for the presence and extent of psychosis, intellectual limitation and personality problems. Id. at ¶47. Dr. Elena Carles,

Ph.D, conducted this evaluation, which took place between August 15 and August 20 of 1999.  Id. at ¶¶48, 50.  Dr. Carles found that plaintiff's "persecutory ideas seem to approach, at times, a delusional level."  Id. at ¶51.  Dr. Deshpande reviewed Dr. Carles' report a few days after it was completed.  Id. at ¶49.

40. Dr. Deshpande's opinions regarding plaintiff were based upon Dr. Deshpande's approximately twenty two years of experience as a psychiatrist.  Id. at ¶53.

41. Based upon plaintiff's diagnosis, Dr. Deshpande suggested to plaintiff that a trial of Olanzapine be started.  Id. at ¶57.  In Dr. Deshpande's professional opinion, the medication was effective in controlling some of plaintiff's anger, and it improved plaintiff's ability to focus and think about her case in a realistic, logical, and coherent manner.  Id. at ¶59.

42. Dr. Deshpande's diagnosis was consistent with that of Terrence Callinan, M.D., who performed a psychiatric evaluation upon plaintiff's admission to CVH on July 28, 1999.  Id. at ¶60.  Dr. Callinan noted that "anti-psychotics are probably warranted."  Id. at ¶61.

43. Dr. Deshpande generated the Competency to Stand Trial Evaluation, and plaintiff was informed that, pursuant to

Conn. Gen. Stat. §54-56d, such a report would be generated and sent to Connecticut Superior Court. <u>Id.</u> at ¶68.

44. Dr. Deshpande conducted regular assessments of plaintiff. <u>Id.</u> at ¶72.

45. Mr. Puglisi met with plaintiff on September 8, 1999 as part of plaintiff's continuing competency evaluation. <u>Id.</u> at ¶96. On that date, plaintiff denied experiencing hallucinations, delusions, or paranoid thinking. <u>Id.</u> at ¶98. At that time, it was the opinion of Mr. Puglisi and the unanimous opinion of the treatment team that plaintiff was able to understand the charges pending against her and that she understood courtroom roles and procedures. The treatment team also found that plaintiff could assist in her defense. <u>Id.</u> at ¶97.

46. On September 10, 1999, in accordance with Conn. Gen. Stat. §54-56d(j), a Competency to Stand Trial Evaluation ("CSTE") signed by Dr. Deshpande and clinical social worker Mark Puglisi was sent to the New London Superior Court. <u>Id.</u> at ¶¶45, 46. It was the unanimous opinion of Mr. Puglisi, Dr. Deshpande, and the whole treatment team that plaintiff was able to understand the charges pending against her, and that she understood courtroom roles and procedures. <u>Id.</u> at ¶76.

47. Plaintiff was released on September 17, 1999, after a court hearing on her competency to stand trial. Id. at ¶78.

48. Plaintiff's restoration to competency, including her actual release, occurred over a period of approximately fifty two days. Id. at ¶79.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The basis for plaintiff's motion for summary judgment is that there "are real genuine issues of material fact."  Pl.'s Mot. for S.J. [Doc. #65] at 1.  However, Fed. R. Civ. P. 56 states that summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  Because plaintiff's Motion for Summary Judgment is merely a recitation of the allegations made in her Amended Complaint and does not establish that there are no disputes of material fact, the Court must deny plaintiff's Motion for Summary Judgment.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.    18 U.S.C. §§241 and 242

   Plaintiff alleges that defendants violated her rights under 18 U.S.C. §§241 and 242.  However, both of these statutes are criminal provisions prohibiting conduct that violates the civil rights of individuals, and neither statute provides for a private cause of action.  See Robinson v. Oversees Military Sales, Corp, 21 F.3d 502, 511 (2d Cir. 1994); Sauls v. Bristol-Meyers Co., 462 F. Supp. 887, 889 (E.D.N.Y. 1978).  Accordingly, Defendants' Motion for Summary Judgment is granted with respect to the 18 U.S.C. §§241 and 242 claims.


II.   Americans With Disabilities Act (ADA)

   In her Motion to Object to Defendants' Motion for Summary Judgment [Doc. #80], plaintiff asserts that defendants violated the ADA.  [Doc. #80 at 9].  The Second Circuit has held however, that "Title II of the ADA does not provide for individual capacity suits against state officials." Ruocco v. Tung, 3:02cv1443(DJS), 2004 U.S. Dist. LEXIS 5518, at *21 (D. Conn. Mar. 30, 2004) (citing Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98, 107 (2d Cir. 2001)).  Because plaintiff has sued defendants solely in their individual capacities, [Doc. #80 at 1], her ADA claims must be dismissed.

III. <u>42 U.S.C. §1983</u>

Section 1983 permits a party who has been deprived of a federal right under the color of state law to seek relief via "an action at law, suit in equity, or other proper proceeding for redress."  <u>See</u> <u>City of Monterey v. Del Monte Dunes at Monterey, Ltd.,</u> 526 U.S. 687, 707 (1999).  To state a cause of action under 42 U.S.C. §1983, a plaintiff must show that: 1) the conduct in question was committed by a person acting under color of state law; 2) the conduct deprived plaintiff of a right or privileges secured by the Constitution and the laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Pitchell v. Callan</u>, 13 F.3d 545, 547 (2d Cir. 1984).  When individuals are placed in custody of the government, government officials may be liable under 42 U.S.C. §1983 "only if [their] omissions were a substantial factor leading to the denial of a constitutionally protected liberty or property interest and the officials displayed a mental state of deliberate indifference with respect to those rights."  <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1044 (2d Cir. 1990).  Although respondeat superior is not available to a plaintiff asserting a claim under §1983, <u>Monell v. New York City of Dep't of Social Services</u>, 436 U.S. 658, 692-695 (1978), a supervisor may nevertheless be held responsible if: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the

violation through a report or appeal failed to remedy the wrong,
(3) the defendant created a policy or custom under which
unconstitutional practices occurred, or allowed the continuance
of such a policy or custom, (4) the defendant was grossly
negligent in supervising subordinates who committed the wrongful
acts, or (5) the defendant exhibited deliberate indifference to
the rights of inmates by failing to act on information indicating
unconstitutional acts were occurring." Colon v. Coughlin, 58
F.3d 865, 873 (2d Cir. 1995). As defendants do not contend that
they were not acting under color of state law during the
incidents at issue in this case,[6] the pivotal issue is whether
plaintiff was deprived of a constitutional right.

### Eighth Amendment[7]

Plaintiff alleges that defendants' treatment of her while
she was a pretrial detainee at CVH violated her Eighth Amendment
right against cruel and unusual punishment. However, it is
settled law that the Eighth Amendment applies only to sentenced
prisoners and not to pretrial detainees. Reiss v. County of
Rockland, No. 84 Civ. 1906, 1985 U.S. Dist. LEXIS 12866, at *7
(S.D.N.Y. Nov. 15, 1985) (citing Bell v. Wolfish, 441 U.S. 520
(1979)). Because "the state does not acquire the power to

---

[6] The Court notes that CVH is a state-operated hospital.
[7] The Eighth Amendment states that: "Excessive bail shall not be
required, not excessive fines imposed, nor cruel and unusual
punishments inflicted." U.S. Const. amend. VIII.

punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law . . . the Eighth Amendment has no application when there has been no formal adjudication of guilt." <u>Santiago v. City of New York</u>, 98 Civ. 6543, 2000 U.S. Dist. LEXIS 15071, at *13 (S.D.N.Y. Oct. 17, 2000) (citing <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 244 (1983)). Therefore, plaintiff's claims that defendants violated her Eighth Amendment rights fail as a matter of law.

<u>Fourteenth Amendment</u>[8]

Although Ms. Marczeski's status as a pretrial detainee forecloses the possibility of her maintaining a cause of action based upon the Eighth Amendment, she is not devoid of all legal redress.  The Supreme Court, as well as courts within the Second Circuit, have repeatedly held that both pretrial detainees and people involuntarily committed to mental institutions are protected from physical harm imposed upon them by agents of the state through the Fourteenth Amendment's Due Process Clause. <u>Graham v. Connor</u>, 490 U.S. 386, 394 n.10 (1989)); <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315 (1982); <u>Bell</u>, 441 U.S. at 535-36; <u>See</u>

---

[8] The Fourteenth Amendment, in relevant part, states that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . ."  U.S. Const. amend. XIV, §1.

also <u>Weyant v. Okst</u>, 101 F.3d 845, 856 (2d Cir. 1996); <u>Santiago</u>,

2000 U.S. Dist. LEXIS 15071, at *13.

> There are three kinds of §1983 claims that may be
> brought against . . . officials acting under color of
> state law under the Due Process Clause of the
> Fourteenth Amendment.  First, the Clause incorporates
> many of the specific protections defined in the Bill of
> Rights.  A plaintiff may bring suit under §1983 for
> state officials' violation of his rights to, e.g.,
> freedom of speech or freedom from unreasonable searches
> and seizures.  Second, the Due Process Clause contains
> a substantive component that bars certain arbitrary,
> wrongful government actions regardless of the fairness
> of the procedures used to implement them . . . The Due
> Process Clause also encompasses a third type of
> protection, a guarantee of fair procedure.  A §1983
> action may be brought for a violation of procedural due
> process,. . . in procedural due process claims, the
> deprivation by state action of a constitutionally
> protected interest in life, liberty, or property is not
> itself unconstitutional; what is unconstitutional is
> the deprivation of such an interest <u>without due process
> of law</u>.  (emphasis original)

<u>Freece v. Young</u>, 756 F. Supp. 699, 701 (W.D.N.Y. 1991) (quoting

<u>Zinermon v. Burch</u>, 494 U.S. 113, 125-26 (1990))(internal

quotations omitted).

<u>Plaintiff's Bill of Rights Claim</u>

Plaintiff alleges that she was denied the ability to meet

with a priest or rabbi, and such denial constituted a deprivation

of her First Amendment right to free exercise of religion.[9]

Because the Supreme Court has held that "inmates clearly retain

---

[9] The First Amendment to the Constitution of the United States
provides in relevant part that "Congress shall make no law
respecting an establishment of religion, or prohibiting the free
speech thereof."  U.S. Const. amend I.

protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), a pretrial detainee may have a viable First Amendment claim if she was, in fact, denied the ability to attend religious services or meet with a priest or rabbi.  In determining whether a prison regulation violates a prisoner's freedom of religion, a court balances four factors: "(1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest." Ali v. Szabo, 81 F. Supp.2d, 447, 470 (S.D.N.Y. 1999) (quoting Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990).

However, the balancing test is unnecessary in the instant matter because even assuming, arguendo, that plaintiff's claim passed the test, she has failed to allege that any of the defendants were responsible for, or participated in, the denial of her First Amendment right.  To sustain an action for a violation of a prisoner's First Amendment right to free exercise of religion, the plaintiff must demonstrate that she "requested the right to practice [her] religion and was denied that right;

that is that [she] requested certain foods, diets, access to books, or religious services and was denied the same." Messina v. Mazzeo, 854 F. Supp. 116, 137 (E.D.N.Y. 1994).

Ms. Marczeski's only basis for her First Amendment claim is the assertion made in her Amended Complaint [Doc. #52] and Motion to Object to Defendants' Motion for Summary Judgment [Doc. #80] that "[she] was denied a priest, rabbi, or minister during [her] entire stay at CVH." [Doc. #52 at 7; Doc. #80 at 14]. Plaintiff does not indicate if, when, or to whom she made a request that she be granted a meeting with a priest or rabbi; without a request, to one or more of the defendants, her First Amendment claim cannot be sustained. See Nicholas v. Raro, 95-CV-379H, 1997 U.S. Dist. LEXIS 6367, at *13-14 (W.D.N.Y. Apr. 7, 1997) ("Absent an allegation that plaintiff requested the right to practice his religion and was denied that right, plaintiff fails to state a claim for denial of religious freedom."); Eze v. Higgins, 95-CV-6S(H), 1996 U.S. Dist. LEXIS 20758, at *12 (W.D.N.Y. Oct. 12, 1996) (motion to dismiss granted where plaintiff alleged that he was denied the ability to attend church, but did not indicate that he conveyed his intention to attend church to prison personnel); Messina, 854 F. at 137 (complaint that failed to allege that plaintiff requested kosher food or the right to attend services and the requests were

subsequently denied could not survive 12(b)(6) motion to
dismiss).

Plaintiff's Substantive Due Process Claims

The Court interprets from plaintiff's filings that she
alleges that defendants deprived her of her substantive due
process rights in two different ways.  First, she alleges that
defendants Deshpande, Mullaney, Franco, and Puglisi provided her
with inadequate medical treatment.  Second, plaintiff asserts
that defendant Mullaney violated the Fourteenth Amendment by
failing to protect plaintiff's personal security during her stay
at CVH.

1. Inadequate Medical Treatment

a. Mental Health Treatment

In the context of mental health treatment, the Supreme Court
has instructed that doctors will not be liable under §1983 for
the treatment decisions they make unless the decision is "such a
substantial departure from accepted judgment, practice, or
standards as to demonstrate that [the doctors] actually did not
base the decision on such a judgment."  Kulak v. City of New
York, 88 F.3d 63, 75 (2d Cir. 1996) (quoting Youngberg, 457 U.S.
at 323).  Because "decisions made by appropriate professionals
are entitled to a presumption of correctness," Astorino v.
Lensink, No. 2:89CV106(JAC), 1993 U.S. Dist. LEXIS 12748, at *17
(D. Conn. Aug. 24, 1993) (quoting Youngberg, 457 U.S. at 324),

"this standard requires more than simple negligence on the part of the doctor but less than deliberate indifference." Kulak, 88 F.3d at 75. After all, "the court's function is not to decide whether the hospital staff made the best decision. Rather it is to determine whether it has made a permissible and reasonable decision in view of the relevant information and within a broad discretion." Ploof v. Brooks, 342 F. Supp. 999, 1004 (D. Vt. 1972) (internal quotations omitted). Therefore, "the Constitution only requires that the courts make certain that professional judgment was in fact exercised." Kulak, 88 F.3d at 75. Moreover, expert testimony on this question is "relevant . . . because that testimony may shed light on what constitutes minimally accepted standards across the profession." Society for Good Will v. Cuomo, 737 F.2d 1239, 1248 (2d Cir. 1984).

Here, plaintiff asserts that defendants are liable under §1983 for an assortment of decisions made regarding her mental health, including: unnecessarily prescribing her Olanzapine [Doc. #52 at 9]; keeping her at CVH for nearly two months [Id. at 1, 6, 8, 11]; and assigning a social worker to her case who was going on vacation for between four and five weeks [Id. at 7]. However, plaintiff failed to present any expert testimony that explained how any of these actions undertaken by the various defendants violated the proper professional standard of care. Defendants, conversely, did present such testimony in the form of affidavits

27

all of which indicated that defendants acted properly.  See,
e.g., Defs.' Ex. G; Defs.' Ex. H.  Therefore, because plaintiff
has failed to create an issue of fact regarding whether
defendants' mental health treatment of her violated professional
standards, defendants are entitled to summary judgment on
plaintiff's claims of inadequate mental health treatment.

     b. Treatment for Physical Maladies

       Although neither the Supreme Court nor the Second
Circuit has set forth a precise due process standard,
see Bryant v. Maffucci, 923 F.2d 979, 983-84 (2d Cir.),
cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S.
Ct. 152 (1991), the protections afforded pretrial
detainees are at least as great as those provided to
convicted prisoners under the Eighth Amendment. Id.;
Montalvo v. New York City Police Officers, 1996 U.S.
Dist. LEXIS 3941, No. 93 Civ. 8351, 1996 WL 148483, at
*4 (S.D.N.Y. Apr. 1, 1996); Quick v. Short, 1990 U.S.
Dist. LEXIS 2816, No. 87 Civ. 695, 1990 WL 29427, at *3
(S.D.N.Y. Mar. 15, 1990). Mere negligence, however, is
insufficient to impose liability under § 1983.
Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662,
106 S. Ct. 662 (1986); Bryant, 923 F.2d at 983.
Similarly, the alleged due process violation must
result in some significant injury to the plaintiff.
Grant v. New York Dep't of Corrections, 1996 U.S. Dist.
LEXIS 312, No. 94 Civ. 2793, 1996 WL 14463, at *3
(S.D.N.Y. Jan. 16, 1996); Zeno v. Cropper, 650 F. Supp.
138, 140-41 (S.D.N.Y. 1986).

West v. City of New York, 88 Civ. 1801 (DC), 1996 U.S. Dist.
LEXIS 6239, at *8-9 (S.D.N.Y. May 8, 1996); See also Rivera v.
State of New York, 96 Civ. 7697(RWS), 1999 U.S. Dist. LEXIS 129,
at *12, *15 (S.D.N.Y. Jan. 12, 1999) (applying the same
deliberate indifference test to pretrial detainee's claims as
would be done to a convicted prisoner's claims); Paxhia v.

Shmigel, 85-CV-1299E, 1992 U.S. Dist. LEXIS 12361, at *6 (W.D.N.Y July 27, 1992) (deliberate indifference standard applied to improper medical treatment claim made by pretrial detainee). But see Ruocco, 2004 U.S. Dist. LEXIS 5518, at *26-28 (applying an objective deliberate indifference standard to pretrial detainee's medical treatment claims rather than a subjective deliberate indifference standard).

Whether the standard that applies to plaintiff's claims is "deliberate indifference" or "something less than deliberate indifference," the result in this matter is the same because plaintiff has not presented evidence that any of the defendants treated her in a manner that was medically inappropriate, nor has she presented evidence indicating that she experienced "some significant injury." Plaintiff's allegations of inadequate medical treatment are based on five incidents: the failure of the third shift to provide her with her inhaler; the delay in plaintiff's receiving a backboard for her bed; the use of soap and/or shampoo that allegedly made plaintiff's scalp bleed; the failure of plaintiff to receive knee surgery; and the consumption by plaintiff of an inadequate diet.

With respect to the claims stemming from the alleged unavailability of plaintiff's inhaler and backboard, the only evidence in the record on point indicates that the treatment plaintiff received at CVH was appropriate. Defs.' Ex. J (Brady's

investigation revealed that "there was overwhelming evidence that contradicted [plaintiff's] claim" that she was denied access to her inhaler); Defs.' Ex. A (plaintiff's medical record indicates she asked and received inhaler at least seventeen times during her stay at CVH.  It also indicates that within seven days of plaintiff's arrival at CVH a backboard had been ordered and subsequently checked out to plaintiff. (Id. at 52)).  Cf. Rodney v. Romano, 814 F. Supp. 311 (E.D.N.Y 1993) (section 1983 action dismissed where examining psychologist determined that treatment desired by plaintiff-pretrial detainee would not be helpful). Therefore, defendants are entitled to summary judgment with respect these claims.

The Court is also unable to find that a material issue of fact exists as to whether the soap and shampoo provided to plaintiff was so deleterious to her health so as to violate the Due Process Clause.  Apart from the assertions made in her Amended Complaint [Doc. #52] that the soap made her scalp bleed, plaintiff did not produce any evidence regarding the extent of the injuries she allegedly received by using the soap CVH provided.  In the face of this failure and considering defendants' evidence that CVH made available DermaPro Spa Body and Hair Shampoo, DermaPro Ultra-Mild Antimicrobial Lotion Soap, and baby shampoo to plaintiff, plaintiff has not presented

evidence adequate to maintain her claim that defendants violated plaintiff's Fourteenth Amendment rights.

Similarly, plaintiff failed to present any evidence indicating what injuries, if any, she suffered as a result of not undergoing knee surgery while she was at CVH.  As such, plaintiff's claim fails as a matter of law.

Prisoners and detainees do have a constitutional right to adequate meals.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  However, plaintiff's claim that defendants violated the Due Process Clause fails because Ms. Marczeski presented no evidence demonstrating that the meals she received at CVH were inadequate.  Unlike in Williams v. Coughlin, 875 F. Supp. 1004 (W.D.N.Y. 1994), where the district court denied summary judgment where plaintiff was deprived of all food for thirty six hours, lost consciousness, and required medical attention as a result, Ms. Marczeski provided no evidence regarding any injury she suffered from eating the food CVH provided.  See also West, 1996 U.S. Dist. LEXIS 6239, at *8 (S.D.N.Y. May 8, 1996) (summary judgment granted where plaintiff did not allege that he suffered any injury from being deprived of his prescribed low-sodium meal).  In fact, plaintiff's own description of her diet contradicts her assertions that she "starved" while at CVH.  Plaintiff admits that she was provided with apples, oranges, tuna fish, bread, and vegetarian food.  [Doc. #65 at 10].  Plaintiff also claims to

31

have gained forty-five pounds during her two months at CVH.
[Doc. #80 at 33].  In the absence of evidence indicating
plaintiff suffered injuries from the food CVH provided, her
Fourteenth Amendment claim must fail.

   2. Denial of a Constitutionally Protected Security Interest[10]

     It is well settled law that involuntarily committed
prisoners and pretrial detainees enjoy "a protected liberty
interest in safety." Youngberg, 457 U.S. at 315.  See also Cecere
v. County of Westchester, 92 CV 1990, 1995 U.S. Dist. LEXIS 5171,
at *8 (S.D.N.Y. Apr. 18, 1995) ("Under the Fourteenth Amendment,
pretrial detainees are presumptively innocent and are entitled to
humane and reasonable treatment, including personal security.").
In explaining the right to safe conditions, the Supreme Court has
noted that, if holding convicted criminals in unsafe conditions
is unconstitutional, so too must be confining those who may not
be punished at all in unsafe conditions.  Youngberg, 457 U.S. at
315-16.

     The Due Process Clause, however, is "not implicated by a
negligent act of an official causing unintended loss of or injury
to life, liberty or property."  Purcell v. Coughlin, 790 F.2d
260, 263 (2d. Cir. 1986) (quoting Daniels v. Williams, 474 U.S.
327).  "To constitute a deprivation of a constitutional right . .

_____

[10] Though not clearly articulated in her filings, the Court
assumes that Mullaney, as CEO of CVH, is the defendant against
whom plaintiff makes the following claims.

. conduct that does not purport to be punishment at all must
involve more than ordinary lack of due care for the prisoner's
safety . . . An express intent to inflict suffering is not
required; deliberate indifference is sufficient." <u>Cecere</u>, 1995
U.S. Dist. LEXIS 5171, at *8.

> The test for deliberate indifference is twofold:
> First, the plaintiff must demonstrate that [she] was
> incarcerated under conditions posing a substantial risk
> of serious harm. Second, the plaintiff must
> demonstrate that the defendant prison officials
> possessed sufficient culpable intent. <u>Farmer</u>, 511 U.S.
> at 834. The second prong of the deliberate
> indifference test, culpable intent, in turn, involves a
> two-tier inquiry. Specifically, a prison official has
> sufficient culpable intent if he has knowledge that an
> inmate faces a substantial risk of serious harm and he
> disregards that risk by failing to take reasonable
> measures to abate the harm. <u>Id.</u> at 847.

<u>Rivera</u>, 1999 U.S. Dist. LEXIS 129, at *24 (S.D.N.Y. Jan. 12,
1999) (citing <u>Hayes v. New York City Dep't of Corrections</u>, 84
F.3d 614, 620 (2d Cir. 1996)).

Plaintiff asserts that conditions at CVH violated her
constitutional right to personal security. Specifically, she
contends that she had a constitutionally protected security
interest in the following: not watching other residents perform
sexual acts [Doc. #52 at 2, 5]; and protection from attacks by
other CVH residents [Id. at 7].

This Court is not willing to hold that plaintiff's
allegation, even if supported by evidence, that on one occasion
she witnessed two patients at CVH engaging in sexual acts

constitutes a constitutional violation on the part of the CEO of
CVH.  Plaintiff has not articulated an argument, let alone
presented evidence, indicating how this incident placed her in
"substantial risk of physical harm."

Plaintiff did, however, have a protected, constitutionally
recognized liberty interest in the safety of her person from
attacks by others.  See Morales v. New York State Dep't of
Corrections, 842 F.2d 27 (2d Cir. 1988) (inmate's claim that
defendant prison officials permitted other inmates to attack him
survived motion to dismiss); Astorino, 1993 U.S. Dist. LEXIS
12748 at *33 (summary judgment denied where intellectually
impaired resident was sexually assaulted by another
intellectually impaired resident); Withers v. Levine, 615 F.2d
158 (4th Cir. 1980) ("prisoner has constitutional right to be
reasonably protected from the constant threat of violence and
sexual assault from his fellow inmates").

The Court, in liberally construing plaintiff's pleadings,
interprets two claims implicating plaintiff's interest in being
protected from physical attacks by other patients at CVH.  The
first claim is based on a "failure to protect" theory.  This
claim stems from Ms. Marczeski's allegations that Mr. Mullaney is
responsible for the actions of CVH patient Guerrera, who
allegedly attacked plaintiff, twisting her arm and sexually
groping her.  [Doc. #52 at 5, 7].

"The standard for prisoner failure to protect claims brought under 42 U.S.C. §1983 is quite high." <u>Rivera</u>, 1999 U.S. Dist. LEXIS 129, at *22 (citing <u>McGriff v. Coughlin</u>, 640 F. Supp. 877, 879 (S.D.N.Y. 1986)).  "The Constitution does not guarantee an assault-free prison environment; it promises only reasonable good faith protection." <u>Id.</u>  Thus, not every injury sustained by a prisoner at the hands of another rises to the level of a constitutional violation.  <u>Strano v. City of New York</u>, 97 Civ. 0387, 1998 U.S. Dist. LEXIS 9258, at *7 (S.D.N.Y. June 23, 1998) (citing <u>Farmer</u>, 511 U.S. at 833.  "In a case involving the failure to prevent harm to one inmate at the hands of another, the mere negligence of a prison official, or lack of due care, will not render him liable for the plaintiff's injuries under the Due Process Clause." <u>Rivera</u>, 1999 U.S. Dist. LEXIS 129, at *23 (citing <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986)). Instead, a prison official is liable for failure to protect when "the defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk."  <u>Strano</u>, 1998 U.S. Dist. LEXIS 9258, at *7 (quoting <u>Bryant v. Maffucci</u>, 923 F.2d 979, 985 (2d Cir. 1991)).

Ms. Marczeski, however, failed to present evidence that satisfies either element of the test.  First, plaintiff did not demonstrate that she was held under conditions that posed a

substantial risk of serious harm.  Plaintiff did not present
evidence that violent attacks were commonplace at CVH, nor did
she present evidence indicating that she, or anyone else at CVH,
anticipated Guerrera's alleged attack on her.  Cf. Strano, 1998
U.S. Dist. LEXIS 9258, at *9-13 (summary judgment granted where
plaintiff-detainee admitted that he was attacked by a fellow
detainee "out of the blue, completely out of nowhere").

In addition, plaintiff did not demonstrate that defendant
Mullaney had sufficient culpable intent.  Nothing in the record
indicates that Mr. Mullaney was aware of any fears plaintiff may
have had for her safety prior to Guerrera's alleged attack.  At
most, plaintiff has alleged that Mr. Mullaney should have known
that she was in danger.  See Doc. #80 at 14, 17.  However,
negligence is not sufficient to sustain a failure to protect
claim.  Dresdner v. Brockenton, 93 Civ. 8814, 1996 U.S. Dist.
LEXIS 11430, at *10 (S.D.N.Y. Aug. 8, 1996) (citing Davidson v.
Cannon,  474 U.S. 344,  347-48 (1986)); Daniels v. Williams, 474
U.S. 327 at 328-31 (1986)).  Therefore, because plaintiff has not
presented any evidence demonstrating that Mr. Mullaney was more
than negligent toward her safety, plaintiff's failure to protect
claim must fail.  See Rivera, 1999 U.S. Dist. LEXIS 129, at *26
(failure to protect claim dismissed when plaintiff did not
establish that defendants had actual knowledge of substantial

risk of serious harm to plaintiff's safety, nor were they subjectively aware that plaintiff faced any risk of harm).

A second claim plaintiff makes, presumably against defendant Mullaney, is that CVH's policy of housing male residents with female residents deprived her of her Constitutional right to be free from sexual assaults. See Doc. #80 at 14, 17; Doc. #52 at 5. Plaintiff alleges that "defendants should [have] well expected danger and harm on a unit that is co-ed . . ." [Doc. #80 at 14].

However, plaintiff's contention that CVH's policy was responsible, and thus Mr. Mullaney was liable, for the injuries she allegedly sustained at the hands of Guerrera fails for two reasons. First, plaintiff has not provided any evidence, outside of the unsubstantiated claims made in her Amended Complaint and briefs, that the policy which plaintiff attacks as "dangerous" exists. Unlike in McKenna v. City. of Nassau, 538 F. Supp. 737 (E.D.N.Y. 1982), aff'd, 714 F.2d 115 (2d Cir. 1982), where the plaintiff produced evidence of a longstanding policy of prison overcrowding, Ms. Marczeski has provided no evidence indicating, for example, where in the facility male and female inmates are housed; how much time male and female inmates spend together; and whether these encounters are supervised by hospital staff. Thus, plaintiff has failed to sufficiently define the "policy" which she attacks.

Second, even if plaintiff had presented evidence that sufficiently defined a policy instituted by CVH that permitted male and female interaction, plaintiff's claim would fail because she has not produced any evidence that such a policy was more than negligent relative to the safety of CVH's patients. Plaintiff has not presented evidence of, nor has she even alleged that, attacks of female patients by male patients were common within CVH.[11]  Plaintiff also has not established that supervision within CVH was inadequate, nor has she demonstrated that any of the defendants knew of the alleged danger Guerrera or other male patients presented to plaintiff.  Therefore, plaintiff failed to present any evidence that Mr. Mullaney, through CVH's policy of permitting male and female interaction, displayed "something more than negligence" toward the safety of Ms. Marczeski.[12]  See Cecere, 1995 U.S. Dist. LEXIS 5171, at *10-11) (summary judgment granted where detainee failed to demonstrate that the facility where he experienced an attack frequently experienced incidents of violence, had inadequate supervision, or defendants knew of the danger confronting plantiff).

---

[11] In fact, plaintiff has not presented any evidence indicating that Guerrera's alleged attack on her was anything but an isolated incident.
[12] The Court notes that Mr. Mullaney ordered an investigation of Ms. Marczeski's claims of sexual assault once he was notified. However, the investigation did not substantiate plaintiff's claims that she was sexually assaulted and/or groped.  Defs'. Ex. J at 4.

Procedural Due Process Claim

Under the Fourteenth Amendment's Due Process Clause, a citizen is guaranteed a fair hearing before she is deprived of a liberty or property interest. See, e.g., Zinermon, 494 U.S. at 125. With respect to procedural due process claims, the issue is not whether the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is unconstitutional. Instead, the question is whether the state provided adequate due process of law before the interest was taken. Id. at 125-26.

Plaintiff's final constitutional claim is that she was deprived of due process of law because her mental competency evaluation was biased. Specifically, plaintiff alleges that Dr. Fox and Mr. Knox fraudulently committed plaintiff to CVH by rigging their mental capacity evaluation of plaintiff. See Doc. #52 at 3.

However, plaintiff has not presented any evidence indicating bias on the part of the defendants who conducted her evaluation. Instead, plaintiff impermissibly relies solely on her own conclusory allegations to support her claim.

Plaintiff claims that the doctors forced her to fail the mental examination. Her evidence for this allegation is that the doctors arrived late, were agitated and rude to plaintiff, and held an examination that was shorter than normal. [Doc. #52 at

3].  Even if the Court were to accept plaintiff's allegations regarding defendants' behavior at the examination as true, this evidence would still not be sufficient to support a claim that the proceeding was unfair.  Plaintiff has not demonstrated any connection between her perceptions of defendants' attitudes and her allegations that defendants rigged plaintiff's competency test.

Furthermore, the Court notes that plaintiff failed to produce a single witness who could testify that either the methods of evaluation used by defendants, or the conclusion reached by them, was incorrect.  Therefore, in the absence of any evidence indicating that plaintiff's mental competency hearing was unconstitutionally unfair, the Court grants summary judgment in favor of defendants Dr. Fox and Mr. Knox on this claim.


CONCLUSION

For the reasons stated, plaintiff's Motion for Summary Judgment **[Doc. #65]** is **DENIED** and defendants' Motion for Summary Judgment **[Doc. #72]** is **GRANTED.**

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order.  Failure to object within ten (10) days may preclude appellate review.  See 28 U.S.C. §636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local

Rules for United States Magistrates; <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989)(per curiam); <u>FDIC v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

Dated at Bridgeport this 9th day of September 2004.

___/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE